AUGUSTINE v ALLSTATE INSURANCE COMPANY

Docket No. 296646. Submitted April 5, 2011, at Detroit. Decided April 26, 2011, at 9:10 a.m.

Shirley Augustine brought an action in the Oakland Circuit Court against Allstate Insurance Company, seeking first-party, no fault insurance benefits. Plaintiff had been seriously injured in an automobile accident and had received from defendant, plaintiff's insurer, payment for the attendant-care services she required for two years before defendant ceased making the payments as a result of a dispute regarding plaintiff's refusal to provide more detailed documentation of the nature of her care. Plaintiff was victorious, and a judgment was entered in her favor. Plaintiff, who had a contingency-fee agreement with her attorneys, sought attorney fees on an hourly basis pursuant to MCL 500.3148(1) for defendant's unreasonable delay in making the benefit payments. The trial court awarded attorney fees to plaintiff. Defendant appealed, challenging the award of attorney fees. The Court of Appeals, MURRAY, P.J., and WHITBECK and TALBOT, JJ., vacated the award of attorney fees and remanded the case to the trial court for further proceedings in light of *Smith v Khouri*, 481 Mich 519 (2008), which was decided after defendant filed its appeal. *Augustine v Allstate Insurance Co*, unpublished opinion per curiam, issued August 21, 2008 (Docket No. 276537) (*Augustine I*). The Court of Appeals provided specific instructions to be followed on remand, explicitly outlining the procedural steps set out in *Smith* for determining a reasonable attorney-fee award. The Court of Appeals explained that, in determining the hourly rate, the focus is on initially finding a reasonable fee, i.e., the fee customarily charged in the locality for similar legal services, and indicted that, if warranted, the trial court can increase the rate on the basis of the relevant factors under *Wood v DAIIE*, 413 Mich 573, 588 (1982), and MRPC 1.5(a). The Court of Appeals ordered the trial court to make specific findings, consistent with *Smith*, with regard to each attorney whose fees plaintiff sought to recover and instructed the trial court to not rely on previous awards to the attorneys without first determining whether those other awards were for work on cases similar to this case. On remand, the visiting trial court judge, Edward Avadenka, granted defendant's request

for an evidentiary hearing regarding the attorney fees. Defendant requested that its expert on attorney fees be given an opportunity to review the entire litigation file that plaintiffs' attorneys relied on in support of their itemization of fees in order to test the accuracy of the billings against the alleged work product. Plaintiff claimed the file was privileged. Defendant stated that it was willing to accept the file with redactions under a protective order. The trial court ruled that defendant could not see the file unless it was used at the evidentiary hearing to refresh the recollection of an attorney witness, in which case it would then be made available to defendant. Following the hearing the trial court held that there was no dispute with regard to the costs incurred and billed, that plaintiff and her attorneys had a contingency-fee agreement, that the charge of $500 an hour was reasonable, and that the reasonable number of hours expended was 537.5. The trial court issued an order awarding plaintiff $250,000 in attorney fees. The trial court, Nanci J. Grant, J., then entered a judgment and order consistent with that order. Defendant appealed.

The Court of Appeals *held*:

1. The trial court abused its discretion when it failed to entertain a procedure that would have allowed defendant access to plaintiff's attorneys' litigation file with the attorneys mental impressions, thoughts, or strategies broadly and completely redacted. In the absence of any meaningful discovery, no genuine inquiry could be made by defendant of plaintiff and defendant could make no real challenge. Defendant met its burden of showing the need for review of properly redacted trial-preparation materials as contemplated by MCR 2.302(B)(3)(a) because it demonstrated a substantial need for the materials and a lack of other reasonable avenues for obtaining the information.

2. The trial court's award of attorney fees on remand was an abuse of discretion under the law-of-the-case doctrine because the trial court failed to make specific findings consistent with *Smith* as directed in *Augustine I*. The trial court did not comply with the first step in the *Smith* analysis, which is to determine the fee customarily charged in the locality for similar legal services. Although the trial court discussed the evidence presented regarding the fee customarily charged in the locality for similar legal services, it did not conclude that $500 an hour was the fee customarily charged. The trial court simply found that $500 an hour was a reasonable fee and did not make a determination whether an upward or downward adjustment was appropriate on the basis of the factors stated in *Wood* and MRPC 1.5(a) as the Supreme Court discussed in *Smith*.

3. The trial court failed to make specific findings consistent with *Smith* and failed to make findings regarding each attorney whose fees plaintiff sought to recover. *Smith* was controlling as the law of the case and the trial court was required to follow the directive in *Augustine I* to make findings consistent with *Smith*. Even if *Smith* were not the law of the case, the trial court should have applied *Smith,* because the framework outlined in *Smith* is the proper standard to be applied in cases brought pursuant to MCL 500.3148(1) when, as in this case, a party seeks hourly attorney fees.

4. The trial court abused its discretion by admitting hearsay evidence consisting of four letters written by four attorneys to plaintiff's attorneys, in response to solicitations from plaintiff's attorneys, in which the four attorneys discussed their hourly fees. The letters were not admissible under MRE 803(6), because they were not business records, and did not satisfy the elements for admission under the other-exceptions provision of MRE 803(24). Despite the fact that the letters tended to establish a material fact, they were not the most probative evidence regarding that material fact that could have been produced through reasonable efforts.

5. The evidentiary hearing established only that plaintiff claimed the amount of hours listed. Plaintiff did not provide a document, an example, or specific testimony to show that a billable item was performed in the amount of time claimed or was even completed. Plaintiff failed to provide documentary support for the work performed and the amount of time spent on any task. The trial court's finding of the hours expended by plaintiff's attorneys was clearly erroneous because so many areas went unexplored and remained undocumented after the hearing. The trial court's calculation of attorney fees was erroneous.

6. A meaningful application of the *Wood* factors and the MRPC 1.5(a) factors utilized for determining attorney-fee awards, as set forth in *Smith,* requires a trial court to consider the interplay between the factors and how they relate to the client, the case, and even the larger legal community. The trial court acknowledged the fee-consideration factors, but provided little analysis or insight into the application of those factors to the client or the case.

7. The trial court abused its discretion by failing to provide defendant limited discovery in order to allow meaningful examination of the issue of an award of attorney fees pursuant to MCL 500.3148(1), by misapprehending the law to be applied, and by entering an award of attorney fees that was inconsistent with the directions of the Court in *Augustine I*. The trial court abused its discretion by admitting the four letters from the attorneys. The

trial court clearly erred in its award of attorney fees because its assessment of the work performed and the number of hours expended both failed for want of evidentiary support. The award of attorney fees is vacated and the case is remanded for rehearing and redetermination by Judge Grant. The judge must make specific findings, consistent with *Smith*, for each attorney whose fees plaintiff seeks to recover.

Vacated and remanded.

1. ATTORNEY AND CLIENT — WORK-PRODUCT DOCTRINE.

The work-product doctrine protects from discovery the notes, working documents, and memoranda that an attorney prepares in anticipation of litigation.

2. ATTORNEY AND CLIENT — ATTORNEYS WORK PRODUCT — DISCOVERY.

A party may obtain discovery of documents and tangible things otherwise discoverable under MCR 2.302(B)(1) and prepared in anticipation of litigation or for trial by or for another party or another party's representative, including an attorney, only on a showing that the party seeking discovery has substantial need of the materials in preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means; a trial court, in ordering discovery of such materials when the required showing has been made, shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation (MCR 2.302[B][3][a]).

3. APPEAL — LAW-OF-THE-CASE DOCTRINE.

The determination of an issue in a case by the Court of Appeals, regardless of the correctness of the determination, binds both the trial court on remand from the Court of Appeals and the Court of Appeals in subsequent appeals in the same case under the law-of-the-case doctrine; on remand, the trial court may not take action that is inconsistent with the judgment of the Court of Appeals; a question of law decided by an appellate court may not be decided differently on remand or in a subsequent appeal in the same case.

4. TRIAL — ATTORNEY AND CLIENT — ATTORNEY-FEE AWARDS.

A trial court determining reasonable hourly attorney fees should first determine the fee customarily charged in the locality for similar legal services using reliable surveys or other credible evidence and then multiply that amount by the reasonable number of hours expended in the case; the court may then consider making

adjustments up or down to this base number in light of the factors listed in *Wood v Detroit Automobile Inter-Insurance Exchange*, 413 Mich 573, 588 (1982), and MRPC 1.5(a); to establish the customarily charged fee, the fee applicant must present something more than anecdotal statements; the trial court should briefly indicate its view of each of the factors.

5. TRIAL — ATTORNEY-FEE AWARDS — REASONABLE HOURLY RATE — MARKET RATE.

The reasonable hourly rate for an attorney's services, for purposes of an award of attorney fees by a trial court, represents the fee customarily charged in the locality for similar legal services, which is reflected by the market rate for the attorney's work; the market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.

6. EVIDENCE — HEARSAY STATEMENTS.

A hearsay statement, in order to be admissible under the "other exceptions" hearsay exception found in MRE 803(24), must demonstrate circumstantial guarantees of trustworthiness equivalent to the categorical exceptions in MRE 803(1) to (23), be relevant to a material fact, be the most probative evidence of that fact reasonably available, and serve the interests of justice by its admission; the trial court should consider the totality of the circumstances, taking into consideration any factors that detract from or add to the reliability of the statement in determining whether a statement has particularized guarantees of trustworthiness.

7. ATTORNEY AND CLIENT — ATTORNEY-FEE AWARDS.

An applicant for an award of attorney fees has the burden to support its claimed hours with evidentiary support; the applicant must submit detailed billing records, which the court must examine and opposing parties may contest for reasonableness.

8. ATTORNEY AND CLIENT — ATTORNEY-FEE AWARDS.

A trial court determining a reasonable attorney fee should consider (1) the professional standing and experience of the attorney, (2) the skill, time, and labor involved, (3) the amount in question and the results achieved, (4) the difficulty of the case, (5) the expenses incurred, and (6) the nature and the length of the professional relationship with the client; consideration should also be given to the following factors listed in MRPC 1.5(a): (1) the time and labor required, the novelty and difficulty of the questions involved, and

the skill requisite to perform the legal services properly, (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer, (3) the fee customarily charged in the locality for similar legal services, (4) the amount involved and the results obtained, (5) the time limitations imposed by the client or by the circumstances, (6) the nature and length of the professional relationship with the client, (7) the experience, reputation, and ability of the lawyer or lawyers performing the services, and (8) whether the fee is fixed or contingent.

*Speaker Law Firm, PLLC* (by *Liisa R. Speaker* and *Jodi M. Latuszek*), for plaintiff.

*Garan Lucow Miller, P.C.* (by *Daniel S. Saylor* and *James L. Borin*), for defendant.

Before: DONOFRIO, P.J., and CAVANAGH and STEPHENS, JJ.

DONOFRIO, P.J. In this first-party, no-fault-insurance action, defendant, Allstate Insurance Company, appeals as of right the trial court's order awarding plaintiff, Shirley Augustine, $327,090.60 for attorney fees and interest. The sole issue on appeal is attorney fees. Defendant maintains that, on remand, the trial court abused its discretion by awarding attorney fees to plaintiff. Because, on remand, the trial court failed to follow the directive of this Court, did not comply with the law-of-the-case rule, and did not properly apply *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), we vacate the award of attorney fees and remand for rehearing and redetermination in accordance with this opinion.

I. FACTS AND PROCEDURAL HISTORY

This is the second time this matter is before this Court. See *Augustine v Allstate Ins Co*, unpublished

opinion per curiam of the Court of Appeals, issued August 21, 2008 (Docket No. 276537) (*Augustine I*). In the first appeal, defendant challenged the trial court's award of attorney fees in the final judgment. *Id.* at 1. This Court vacated the award and remanded the case for further proceedings in light of *Smith*, which was decided after defendant filed its appeal. *Augustine I*, unpub op at 1, 3. The *Augustine I* Court set out the substantive facts of the case as follows:

> Plaintiff was seriously injured in an auto accident and sought first-party, no-fault benefits from her insurer, defendant, to pay for the permanent attendant care that she now requires. Defendant paid the benefits for two years but ceased payments over a dispute regarding plaintiff's refusal to provide more detailed documentation of the nature of her care. Plaintiff brought the instant suit and was victorious, recovering $371,700 of the $929,000 that she sought, plus interest in the amount of $42,524. Plaintiff subsequently sought attorney fees pursuant to MCL 500.3148(1) due to defendant's "unreasonable delay" in making benefit payments. The trial court awarded attorney fees in the amount of $312,625 based upon a finding that plaintiff's attorneys had done 543.75 hours of work at $500 per hour and 51.25 hours at $300 per hour.[1] [*Id.* at 1.]

Defendant appealed the final judgment, challenging the reasonableness of the award of attorney fees. After the briefs were filed, our Supreme Court decided *Smith*, 481 Mich at 522 (opinion by TAYLOR, C.J.), which delineated the steps a trial court must take when considering a request for attorney fees. *Augustine I*, unpub op at 2. This Court held that "[i]n light of the procedure set out by the

---

[1] Notwithstanding a contingency-fee agreement, plaintiff sought attorney fees on an hourly basis. Of the $312,625 the trial court awarded, $287,250 represented the actual attorney fees ordered. *Augustine I*, unpub op at 2 (" '[T]he Court will allow 543.75 hours at $500.00 per hour and 51.25 hours at $300.00 per hour for a total of $287,250.00.' ").

*Smith* Court, which the trial court naturally did not follow, we must vacate the award of attorney fees and remand to the trial court to apply the procedure outlined in *Smith*." *Id.* at 3.

In ruling in the first appeal, this Court provided specific instructions to be followed on remand, explicitly outlining the procedural steps set out in *Smith* for determining a reasonable attorney-fee award. *Augustine I*, unpub op at 2-3. This Court explained that "in determining the hourly rate, the focus is on initially finding a reasonable fee, i.e., the 'fee customarily charged in the locality for similar legal service.' " *Id.* at 3, citing *Smith*, 481 Mich at 530 (opinion by TAYLOR, C.J.). It further indicated that "if warranted, the court can increase [the] rate based upon the relevant factors under *Wood* [*v DAIIE*, 413 Mich 573, 588; 321 NW2d 653 (1982)] and MRPC 1.5(a)." *Id.* at 3. This Court vacated the trial court's award of attorney fees, remanding the case for the trial court "to make specific findings, consistent with *Smith*, on each attorney whose fees plaintiff sought to recover . . . ." *Id.* It also explicitly instructed that, on remand, "the trial court should take care in not relying upon previous awards to these attorneys without first determining whether those other awards were for work on cases similar to this one." *Id.*

### A. ON REMAND

On remand, the trial court granted defendant's request for an evidentiary hearing regarding attorney fees. Defendant requested that its expert be given the opportunity to review the entire litigation file that plaintiff's attorneys relied on in support of their itemization of fees. Defendant argued that it needed to see if all the work that was attributed to the attorneys was reflected in the file in order to test the accuracy of the

billings against the alleged work product. Plaintiff maintained that the request for the file went far beyond what was argued during the first appeal and that she feared that defendant would publish the contents of the file. Though defendant was willing to accept the file with redactions under a protective order, plaintiff argued that it was improper to allow defendant access to the attorneys' work product and privileged communications. Plaintiff contended that the entire file was privileged and that without the privileged information there would be nothing left for defendant's expert to review other than the billing summary. The trial court ruled that defendant could not see the litigation file unless it was used at the evidentiary hearing to refresh the recollection of an attorney witness, in which case the file would then be made available.

### B. EVIDENTIARY HEARING

On October 9, 2009, the trial court conducted an evidentiary hearing on fees. It was established that the law firm of Liss, Seder & Andrews gave plaintiff the option of paying an hourly fee of $500 or entering into a contingency-fee arrangement for representation. The $500 hourly fee was based on factors such as the law firm's experience, track record, commitments made to other clients, and limited resources, and the difficulty of handling catastrophic no-fault-insurance cases. Plaintiff chose to enter into a contingency-fee arrangement.

Plaintiff's trial attorney, Nicholas Andrews, prepared the billing summary as part of his trial preparation and completed the summary after the trial. Liss, Seder & Andrews did not have an "office procedure or methodology" for keeping track of the time expended on cases on a daily basis. Senior partner Arthur Liss testified that he never made his time entries contemporaneously

with his work. Andrews testified that he may have used an Excel spreadsheet or office notes to assist in the preparation of a billing summary. The minimum time increment for billing was 0.25 hours. Plaintiff's attorneys indicated that a significant amount of the time that the firm actually expended on the case was not billed and emphasized that these types of cases required extensive discussion between the attorneys in the office to strategize. The trial court admitted into evidence in support of the firm's claim for 625.25 hours the firm's billing summary, a listing of the dates of service, the identification of each of the four lawyers who provided a service, a brief description of the service provided, and a time entry. Liss and Andrews testified regarding their expertise, experience, trial results, and other fee awards that they had each received. Plaintiff also produced letters from four attorneys that had been sent to plaintiff's attorneys regarding the fees they charged and were awarded in similar cases. Though the trial court recognized the letters as being self-serving, the trial court admitted the letters into evidence over defendant's objection because they were records kept in the ordinary course of business.

Defense counsel James Borin testified for the defense. The trial court admitted Borin's law firm's billing statement that reflected hourly charges totaling 252.8 hours. The trial court also admitted a survey of the hourly rates of approximately 208 attorneys authorized to conduct mediation in Oakland County during the relevant time. The trial court also admitted the State Bar of Michigan's 2007 Economics of Law Practice survey on hourly billing rates. Defendant also produced Thomas H. Blaske, who testified as an expert regarding attorney fees. Blaske provided testimony regarding plaintiff's counsel's practice, hourly rates, and allegedly excessive charges based on plaintiff's counsel's billing summary alone. He also stated

that he was unable to provide a complete analysis of the reasonableness of plaintiff's attorneys' services because he did not have plaintiff's litigation file to cross-check the services enumerated.

## C. OPINION OF THE TRIAL COURT

On December 30, 2009, the trial court issued an opinion and order that was later reduced to a judgment. The trial court acknowledged the remand order from this Court and then proceeded to perform an analysis of the evidence submitted. The trial court addressed the reasonableness of the hourly fee and, in making that determination, relied on the factors set forth in *Wood*, 413 Mich at 588, *Crawley v Schick*, 48 Mich App 728, 737; 211 NW2d 217 (1973), and MRPC 1.5 as referred to in *Smith*, 481 Mich at 529-532 (opinion by TAYLOR, C.J.). The trial court commented on the arguments of the attorneys, the witnesses testimony, and generally on the character of the evidence regarding each party's view of the reasonable local fee that should be used. The trial court opined that these cases (the underlying action for attendant-care services) are among the most complex civil cases. The trial court observed that Andrews had a long relationship with the client, having represented her in a previous attendant-care dispute with the same carrier, and had obtained good results in both cases. In summary, the trial court held that there was no dispute with regard to the costs incurred and billed, that the fee arrangement was contingent, that Blaske was well recognized as an expert, but that his opinion on fees in Oakland County based on the mediator pool survey would not be credited, that the charge of $500 an hour was reasonable, and that the reasonable number of hours was 537.5. Ultimately, the trial court awarded $250,000 in attorney fees. This appeal followed.

II. DISCOVERY

First, defendant argues that the trial court committed error requiring reversal by denying defendant's discovery request for plaintiff's entire litigation file. Generally, we review the grant or denial of a discovery motion for an abuse of discretion. *Linebaugh v Sheraton Mich Corp*, 198 Mich App 335, 343; 497 NW2d 585 (1993). An abuse of discretion is not simply a matter of a difference in judicial opinion, rather it occurs only when the trial court's decision is outside the range of reasonable and principled outcomes. *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007).

Whether the attorney-client or work-product privilege may be asserted is a question reviewed de novo by this Court. *Leibel v Gen Motors Corp*, 250 Mich App 229, 236; 646 NW2d 179 (2002); *Koster v June's Trucking, Inc*, 244 Mich App 162, 168; 625 NW2d 82 (2000). Whether a party has waived a privilege is also a question of law that this Court reviews de novo. *Leibel*, 250 Mich App at 240. Once we determine whether the privilege is applicable, this Court then reviews whether the trial court's order was an abuse of discretion. *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 618; 576 NW2d 709 (1998).

"It is well settled that Michigan follows an open, broad discovery policy that permits liberal discovery of any matter, not privileged, that is relevant to the subject matter involved in the pending case." *Id.* at 616, citing MCR 2.302(B)(1). This is true "whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party." *Cabrera v Ekema*, 265 Mich App 402, 407; 695 NW2d 78 (2005), citing MCR 2.302(B)(1). However, "Michigan's commitment to open and far-reaching discovery does not encompass fishing expedition[s]." *VanVorous v Burmeis-*

*ter*, 262 Mich App 467, 477; 687 NW2d 132 (2004) (quotation marks and citation omitted). "Allowing discovery on the basis of conjecture would amount to allowing an impermissible fishing expedition." *Id.*

MCR 2.302(B)(1) limits discovery to matters that are not privileged. "The attorney-client privilege attaches to direct communication between a client and his attorney as well as communications made through their respective agents." *Reed Dairy Farm*, 227 Mich App at 618. "The scope of the attorney-client privilege is narrow, attaching only to confidential communications by the client to his advisor that are made for the purpose of obtaining legal advice." *Id.* at 618-619. "Although either [the attorney or the client] can assert the privilege, only the client may waive the privilege." *Kubiak v Hurr*, 143 Mich App 465, 473; 372 NW2d 341 (1985).

This Court has also recognized the common-law privilege protecting the disclosure of attorney work product. *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 638; 591 NW2d 393 (1998). The work-product doctrine protects from discovery the notes, working documents, and memoranda that an attorney prepares in anticipation of litigation. *Leibel*, 250 Mich App at 244. MCR 2.302(B)(3)(a) provides:

> Subject to the provisions of subrule (B)(4), a party may obtain discovery of documents and tangible things otherwise discoverable under subrule (B)(1) and prepared in anticipation of litigation or for trial by or for another party or another party's representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only on a showing that the party seeking discovery has substantial need of the materials in preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the

mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

"Thus, if a party demonstrates the substantial need and undue hardship necessary to discover work product, that party may discover only factual, not deliberative, work product." *Leibel*, 250 Mich App at 247 (quotation marks and citation omitted). Like the attorney-client privilege, a party may waive work-product protections. *Id.* at 248.

The trial court did not directly address the issue of privilege in its ruling and defendant acknowledges that it was not seeking information protected by the attorney-client privilege. The trial court simply held that the file was not available to defendant unless a question was asked of an attorney witness at the evidentiary hearing and the file was necessary to refresh the attorney witness's recollection.

The nature of a request for discovery in a claim such as that presented here for attorney fees allowable pursuant to MCL 500.3148(1) must be carefully scrutinized. A request for discovery that constitutes an attempt to invade the attorney-client relationship or to discover the mental impressions and strategies generally employed by opposing counsel must be rejected. But the reasonableness of an attorney-fee claim cannot be assessed in a vacuum. At the time of the discovery request, defendant had been provided a simple, albeit lengthy, billing statement without any corroboration of the time reflected. Defendant knew that plaintiff's attorneys' law firm did not maintain a time-billing procedure and that lawyers of the firm did not make contemporaneous time entries. Further, defendant knew that the summary billing statement presented in support of an attorney-fee award was a retrospective

exercise based on memory and possibly some office notes or Excel spreadsheets. Defendant could only compare dates from its own counsel's billing statement with plaintiff's summary to determine if there was a comparable match. If there were logs, reports, summaries, or spreadsheets that would tend to corroborate the billing statement, they could be provided with the redaction of any impressions or thoughts on future work or strategies. In other words, counsel for plaintiff could provide a copy of the litigation file with all items that include the mental impressions, thoughts, or strategies of counsel broadly and completely redacted. The "sanitized" file would clearly be useful in corroborating and validating time claims to determine a reasonable attorney fee. Carefully redacting the litigation file would assuage the trial court's concern that there was nothing to stop defendant's attorney from obtaining strategy information from the litigation file that could be used in subsequent cases against plaintiff's attorneys. The trial court's failure to even entertain such a procedure seems highly unreasonable and therefore an abuse of discretion.

A review of the evidentiary hearing causes concern regarding the likelihood that an honest and fair determination of fees could be awarded on this record. Blaske testified as an expert but he could not offer a complete analysis of the reasonableness of plaintiff's conduct, charges, or time on the billing summary without some materials from which to extrapolate. Starkly, the litigation file was noticeably absent. Notwithstanding defendant's attempt to serve a subpoena for the file by certified mail before the evidentiary hearing, plaintiff refused the mail. During the evidentiary hearing, neither Liss nor Andrews referred to the litigation file, and both denied having reviewed any of it in preparation for the hearing. As a result, the testimony was replete with

speculation, conjecture, and a denial of knowledge. Liss testified at the evidentiary hearing that the billing statement did not refresh his recollection of what he did or the time spent on any listed service. Both of plaintiff's lead counsel lacked any specific memory of the time spent on any series of billable events. This is curious. In the end, all that one could reasonably glean from the testimony of plaintiff's attorneys concerning the summary billing statement was that they submitted it, therefore they believed that it was correct, and in fact, they believed that it was an underestimate of the time spent on the matter.

The burden of proving the reasonableness of a request for attorney fees rests with the party requesting it. *Smith*, 481 Mich at 528-529 (opinion by TAYLOR, C.J.). Here, in the absence of any meaningful discovery, no genuine inquiry could be made of the party requesting the fees and concomitantly no real challenge could be made by the party opposing the fee request. Under these circumstances, defendant has met its burden of showing the need for review of properly redacted trial-preparation materials as contemplated by MCR 2.302(B)(3)(a) because it has demonstrated a substantial need for the materials and a lack of other reasonable avenues for obtaining the information. The failure of the trial court to grant discovery when defendant agreed to redacted materials and a protective order as provided in the rule is not a principled outcome because it denied defendant a fair opportunity to be meaningfully heard on the issue.

### III. DETERMINATION OF ATTORNEY FEES

Interpreting the meaning of a court order involves questions of law that are reviewed de novo. *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 460; 750

NW2d 615 (2008). This Court also reviews de novo the question of law whether the trial court followed this Court's ruling on remand. *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 127; 737 NW2d 782 (2007). Similarly, this Court reviews de novo the determination whether the law-of-the-case doctrine applies and to what extent it applies. *Kasben v Hoffman*, 278 Mich App 466, 470; 751 NW2d 520 (2008).

This Court generally reviews for an abuse of discretion a trial court's decision to award attorney fees and the determination of the reasonableness of the fees. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008); *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 438; 695 NW2d 84 (2005). Again, an abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *Saffian*, 477 Mich at 12.

"[T]he decision whether to admit or exclude evidence is reviewed for an abuse of discretion." *Elezovic v Ford Motor Co*, 472 Mich 408, 419; 697 NW2d 851 (2005). "Evidentiary errors are not a basis for vacating, modifying, or otherwise disturbing a judgment unless declining to take such action would be inconsistent with substantial justice." *Miller v Hensley*, 244 Mich App 528, 531; 624 NW2d 582 (2001).

This Court "review[s] the trial court's factual findings for clear error." *Brandt v Brandt*, 250 Mich App 68, 72; 645 NW2d 327 (2002). There is clear error when there is "no evidentiary support for [the factual findings] or where there is supporting evidence but the reviewing court is nevertheless left with a definite and firm conviction that the trial court made a mistake." *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706 (2007). "This Court affords great deference to the special opportunity of the trial court to judge the

credibility of the witnesses who appeared before it."
*Lumley v Univ of Mich Bd of Regents*, 215 Mich App
125, 135; 544 NW2d 692 (1996).

## A. LAW-OF-THE-CASE DOCTRINE

Defendant argues that the trial court abused its
discretion by awarding attorney fees on remand be-
cause it failed to comply with this Court's remand
directive. Under the law-of-the-case doctrine, this
Court's determination of an issue in a case binds both
the trial court on remand and this Court in subsequent
appeals. *Grievance Administrator v Lopatin*, 462 Mich
235, 260; 612 NW2d 120 (2000). On remand, the trial
court may not take action that is inconsistent with the
judgment of this Court. *Id*. "[T]he trial court is bound
to strictly comply with the law of the case, as estab-
lished by [this Court], according to its true intent and
meaning." *Kasben*, 278 Mich App at 470 (quotation
marks and citation omitted). "Thus, a question of law
decided by an appellate court will not be decided differ-
ently on remand or in a subsequent appeal in the same
case." *Driver v Hanley (After Remand)*, 226 Mich App
558, 565; 575 NW2d 31 (1997). "This rule applies
without regard to the correctness of the prior determi-
nation." *Id*. "Where the trial court misapprehends the
law to be applied, an abuse of discretion occurs." *Bynum
v ESAB Group, Inc*, 467 Mich 280, 283; 651 NW2d 383
(2002).

In remanding the case in the first appeal, this Court
explicitly directed "the trial court to make specific find-
ings, consistent with *Smith*, on each attorney whose fees
plaintiff sought to recover . . . ." *Augustine I*, unpub op at
3. This Court clearly ordered the trial court to complete a
*Smith* analysis to determine the award of attorney fees. In
*Smith*, 481 Mich at 537 (opinion by TAYLOR, C.J.), our

Supreme Court outlined very specific steps for determining reasonable attorney fees. First, the trial court should "determine the fee customarily charged in the locality for similar legal services," which shall be made using "reliable surveys or other credible evidence." *Id.* To establish the customarily charged fee, the fee applicant must present "something more than anecdotal statements . . . ." *Id.* at 532. Next, the trial court "should multiply that amount by the reasonable number of hours expended in the case." *Id.* at 537. Finally, the trial court "may consider making adjustments up or down to this base number in light of the other factors listed in *Wood* and MRPC 1.5(a)." *Id.* The trial court "should briefly indicate its view of each of the factors." *Id.*

Given the remand directive, the trial court's award of attorney fees was an abuse of discretion under the law-of-the-case doctrine because the trial court failed to make specific findings consistent with *Smith*. It did not comply with the first step in the *Smith* analysis, which is to determine the fee customarily charged in the locality for similar legal services. Though the trial court discussed the evidence presented regarding the fee customarily charged in the locality for similar legal services, it did not conclude that $500 an hour was the fee customarily charged. As stated in *Smith*, 481 Mich at 531-532 (opinion by TAYLOR, C.J.):

> The reasonable hourly rate represents the fee customarily charged in the locality for similar legal services, which is reflected by the market rate for the attorney's work. The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question. We emphasize that the burden is on the fee applicant to produce satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are in line with those prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience and reputation. The fees customarily charged in the locality for similar legal services can be established by testimony or empirical data found in surveys and other reliable reports. But we caution that the fee applicant must present something more than anecdotal statements to establish the customary fee for the locality. Both the parties and the trial courts of this state should avail themselves of the most relevant available data. For example, as noted earlier, in this case defendant submitted an article from the Michigan Bar Journal regarding the economic status of attorneys in Michigan. [Quotation marks, citations, and footnote omitted.]

In the instant case, the trial court apparently failed to credit the Michigan Bar Journal article in its calculus of the appropriate hourly rate. The Michigan Bar Journal article not only ranks fees by percentile, it differentiates fee rates on the basis of locality, years of practice, and fields of practice. Further, the record was silent in drawing any comparisons between no-fault-insurance litigation and other complex areas of litigation. The trial court simply accepted the testimony that the area of the law was complex. This is undoubtedly so, however, the trial court excluded from its analysis evidence of other complex areas of litigation that may rival no-fault-insurance litigation in complexity and for which a published fee is established. Also, amazingly absent from the testimony, evidence of anecdotal experiences, and other statements was any substantive evidence that real, actual clients have paid $500 an hour in similar circumstances. Ultimately, the language of the trial court's opinion and order indicates that it simply found that $500 an hour was a *reasonable fee* in a first-party, no-fault-insurance case on the basis of its review of the criteria set forth in *Crawley*, 48 Mich App at 737, and MRPC 1.5. But, importantly, the trial court did not find that $500 an hour was the *fee customarily*

*charged in the locality for similar legal services.* The trial court then multiplied the rate of $500 an hour by the reasonable number of hours expended, but did not make the determination whether an upward or downward adjustment was appropriate on the basis of the *Wood* and MRPC 1.5(a) factors as our Supreme Court discussed in *Smith*, 481 Mich at 537 (opinion by TAYLOR, C.J.).

Not only did the trial court fail to make specific findings consistent with *Smith* generally, but it also failed to make findings regarding each attorney whose fees plaintiff sought to recover. The trial court's opinion and order indicated, "[o]ther attorneys in the office were involved at various time [sic] and they will be discussed later," but the trial court never addressed them later in the opinion. The only attorneys that the trial court highlighted were Andrews and Liss. In the first award of attorney fees, the trial court discussed the rate of $300 an hour for attorneys Karen Seder and Jay Schrier. *Augustine I*, unpub op at 1. Presumably these were the "other attorneys." But, on remand, the trial court failed to refer to Seder and Schrier, and the trial court curiously did not include the rate of $300 an hour in its attorney-fee calculation.

The law-of-the-case doctrine "applies without regard to the correctness of the prior determination," and this Court is bound by the decision on a question of law made by a panel of this court in the first appeal. *Driver*, 226 Mich App at 565. While plaintiff highlights cases regarding the applicability of *Smith* and the failure to address *Smith*, these references to no-fault-insurance attorney-fee cases, interesting as they may be, are wholly irrelevant. *Smith* is controlling as the law of the case, and the trial court was required to follow this Court's remand directive to make findings consistent

with *Smith*. But, even were it not the law of this case as a result of *Augustine I*, the trial court should have applied *Smith*, because the framework outlined in *Smith* is the proper standard to be applied in cases brought pursuant to MCL 500.3148(1) when a party seeks hourly attorney fees.[2] Thus, the trial court abused its discretion because it misapprehended the law to be applied, the award of attorney fees was inconsistent with our remand directive, and the trial court did not properly apply *Smith*.

---

[2] We are not unmindful of this Court's opinion in *Univ Rehab Alliance, Inc v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 691; 760 NW2d 574 (2008), in which this Court rejected the applicability of *Smith* in the context of an award of attorney fees based on an unreasonable delay in paying no-fault-insurance benefits. But that case is distinguishable on its facts. While the plaintiff in *Univ Rehab* and plaintiff in the instant case both retained counsel under a contingent-fee agreement, only the plaintiff in *Univ Rehab* sought to recover an attorney-fee award pursuant to that agreement. Plaintiff here sought recovery of attorney fees on an hourly basis, rejecting her own contingency-fee agreement. *Univ Rehab* rejected the applicability of *Smith* to contingent-fee awards under MCL 500.3148(1), stating that "a reasonable attorney fee is determined by considering the totality of the circumstances. While a contingent fee is neither presumptively reasonable nor presumptively unreasonable, multiplying the reasonable number of hours worked by a reasonable hourly rate is not the preferred method." *Univ Rehab*, 279 Mich App at 700. Certainly, the *Wood* and MRPC 1.5(a) factors as reflected in *Smith* would be considered under the totality of the circumstances in an evaluation of the reasonableness of a fee request based on a contingency-fee agreement. Unlike in *Smith*, the trial court is not required to first establish a base rate in its analysis of the reasonableness of the fee request based on a contingency-fee agreement. Here, plaintiff has rejected her contingency-fee agreement and seeks to have an hourly rate employed in the determination of a reasonable attorney fee. This is a completely different situation than the situation presented in *Univ Rehab*. Plaintiff here sought to recover an award of attorney fees on an hourly basis under MCL 500.3148(1). And while we conclude that the *Smith*, 481 Mich at 537 (opinion by TAYLOR, C.J.), analysis is controlling and should be applied here because it is the law of the case, we similarly conclude that it is the appropriate analysis and should be applied under these and similar circumstances where plaintiffs seek recovery of attorney fees on an hourly basis pursuant to MCL 500.3148(1).

B. ATTORNEY LETTERS IN SUPPORT OF FEE CALCULATION

Defendant also contends that the trial court erred by admitting, over defendant's relevance and hearsay objections, four letters written by attorneys who had litigated catastrophic no-fault-insurance cases in which letters they discussed their hourly fees. " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). In *Int'l Union, United Auto, Aerospace & Agricultural Implement Workers of America v Dorsey (On Remand)*, 273 Mich App 26, 41-42; 730 NW2d 17 (2006), quoting *People v Katt*, 468 Mich 272, 290-291; 662 NW2d 12 (2003), we stated:

> [I]n order to be admissible under the exception found in MRE 803(24), "a hearsay statement must: (1) demonstrate circumstantial guarantees of trustworthiness equivalent to the categorical exceptions, (2) be relevant to a material fact, (3) be the most probative evidence of that fact reasonably available, and (4) serve the interests of justice by its admission." There is no complete list of factors to consider when determining whether a statement has " ' "particularized guarantees of trustworthiness." ' " [Citation omitted.]

Because there is no complete list of factors to consider when determining whether a statement has particularized guarantees of trustworthiness, the trial court should consider the totality of the circumstances. *Dorsey*, 273 Mich App at 42. Any factors that detract from or add to the reliability of the statement should be taken into consideration. *Id.*

At the hearing, plaintiff argued that the four letters from the attorneys should be admitted under the "catch-all" exception because they were inherently reliable. Instead of articulating the reason that the letters were inherently reliable, plaintiff simply argued:

> [Y]our Honor, you're the gatekeeper of evidence. We do not have a juror [sic]. As the gatekeeper of all evidence in any case, you can make the determination both of reliability and what weight to give any particular document. As you said earlier, this is essentially a bench trial, and I think that you can use the catch-all to make that determination.

The trial court responded, "[a]nd that's exactly what I'm going to do. I will accept these in evidence based upon that, the same way I will not entertain any objection to [defendant's Oakland County courthouse compilation of fees for mediators] . . . because I think they fall in the same class . . . ."

The trial court abused its discretion by admitting the letters into evidence because they were not admissible under MRE 803(6) or (24). The letters were hearsay because they contained statements that were not made by any declarant testifying at the trial or hearing and were offered in evidence to prove the truth of the matter asserted. MRE 801(c). The letters were not admissible under MRE 803(6) because they were not business records. Rather, the letters were nothing more than responses to solicitations by plaintiff's counsel in form and content for use in supporting the demand for an attorney fee of $500 an hour. The attorneys solicited had all referred similar cases to plaintiff's attorneys' law firm. Similarly, the letters were not admissible under MRE 803(24) because they did not satisfy the elements of this exception. At the evidentiary hearing, there was no evidence offered to demonstrate that there existed circumstantial guarantees of trustworthiness equivalent to the categorical exceptions in MRE 803(1) to (23). Considering the totality of the circumstances, the letters were not sufficiently trustworthy because they were prepared exclusively for litigation, they were all favorable to plaintiff, the attorneys who wrote the letters had reason to exaggerate because it might ben-

efit their attorney-fee awards in the future, and there was no independent evidence presented to support the attorneys' claims that their rates were $500 an hour. Despite the fact that the letters tended to establish a material fact, they were not the most probative evidence regarding that fact that the plaintiff could have produced through reasonable efforts.

## C. HOURS AND FUNCTION

Defendant also argues that the trial court abused its discretion by assessing the number of hours allowed for the attorney-fee calculation. "The fee applicant bears the burden of supporting its claimed hours with evidentiary support." *Smith*, 481 Mich at 532 (opinion by TAYLOR, C.J.). "The fee applicant must submit detailed billing records, which the court must examine and opposing parties may contest for reasonableness." *Id.*

Because of the meager state of the record, the trial court's finding that plaintiff's attorneys expended 537.5 hours instead of the 595 hours claimed is not subject to meaningful review. The evidentiary hearing established only that plaintiff claimed the amount of hours listed. While the billing summary supported the hours plaintiff's attorneys claimed they expended, the testimony provided in its support was so overwhelmingly lacking in substance and description that any statement of hours spent on a particular task is suspect for accuracy. Notably, plaintiff had the burden of supporting the claim for fees. But plaintiff did not demonstrate by a document, an example, or with specific testimony that a billable item was performed in the amount of time listed or, for that matter, even completed. The billing summary alone did not explain the work that was actually performed by plaintiff's attorneys, as shown by the fact that the

billing summary did not refresh Liss's memory regarding what work he did on a particular entry. While defendant was able to cross-examine plaintiff's attorneys with regard to the time they spent on the case and presented an expert who rendered an opinion on some of the hours expended as they appeared on the face of the document, defendant's cross-examination was substantially limited by the absence of litigation materials.

Our review of the record reveals that plaintiff requested attorney fees in her complaint. Considering the fact that plaintiff's counsel requested attorney fees from the very outset of the underlying claim, we are befuddled by the fact that plaintiff's attorneys claim they had no billing protocol to account for those fees and did not set one up. In today's technological world, it would be but a minute task to set up a spreadsheet detailing the date of the service, the service provided, the time expended on the task, and the amount charged for the specific service that could be updated and summed at any time. Indeed, it would seem a handwritten ledger might even do. Plaintiff's attorneys allege that they are top-tier attorneys with exceptional experience in their field. We do not challenge this point. But we do find it inconceivable that attorneys of this caliber and experience would be unaware of the requirements of *Smith* and would not keep adequate records in support of their claims for attorney fees, especially considering the amount of time and talent expended on this case. As a result of these deficiencies, plaintiff did not and could not point to any documentary support for the work performed and the amount of time spent on any task in the absence of counsel's file. Consequently, counsel for defendant was effectively handcuffed by the re-

fusal of discovery and plaintiff's strategy of not bringing her counsel's file to the evidentiary hearing.

On the basis of the evidence presented, the trial court made the finding that the billings were unreasonable in certain areas. Indeed, we afford great deference to the special opportunity of the trial court to judge the credibility of the witnesses at the evidentiary hearing. *Lumley*, 215 Mich App at 135. But because so many areas went unexplored and remained undocumented after the hearing, we must conclude that the trial court's finding of the hours expended by plaintiff's attorneys was clearly erroneous. *Hill*, 276 Mich App at 308. We question the value of an evidentiary hearing where the evidence reviewed was restricted and the areas explored so narrow. A hearing on remand will necessarily require expansion. Because we have found that the trial court clearly erred in its assessment of the number of hours allowed for the attorney-fee calculation, we conclude that the trial court's calculation of attorney fees on this record was erroneous. See *id.*

### D. *SMITH*, *WOOD*, AND MRPC 1.5(a) FACTORS

The *Wood* factors and the MRPC 1.5(a) factors used for determining attorney-fee awards overlap and are both set forth in *Smith*, 481 Mich at 530-531 (opinion by TAYLOR, C.J.). According to *Smith*, the six factors to be considered in determining a reasonable attorney fee that were set out in *Wood* are

"(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." [*Smith*, 481 Mich at 529 (opinion by TAYLOR, C.J.), quoting *Wood*, 413 Mich at 588 (citations omitted).]

The *Smith* Court also set out the eight factors listed in Rule 1.5(a) of the Michigan Rules of Professional Conduct to be considered in determining a reasonable attorney fee, as follows:

> "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> "(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> "(3) the fee customarily charged in the locality for similar legal services;
>
> "(4) the amount involved and the results obtained;
>
> "(5) the time limitations imposed by the client or by the circumstances;
>
> "(6) the nature and length of the professional relationship with the client;
>
> "(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> "(8) whether the fee is fixed or contingent." [*Smith*, 481 Mich at 530 (opinion by TAYLOR, C.J.), quoting MRPC 1.5(a).]

In *Smith*, the Supreme Court endeavored to "fine-tune" the multifaceted and intersecting approach for determining fee awards set out in both *Wood* and MRPC 1.5(a). *Smith*, 481 Mich at 530 (opinion by TAYLOR, C.J.). In order to promote greater consistency in attorney-fee awards, *Smith* directed that a trial court should begin its analysis by first applying factor 3 under MRPC 1.5(a) ("the fee customarily charged in the locality for similar legal services") and then multiplying that number by the reasonable number of hours expended as determined by factor 1 under MRPC 1.5(a) and *Wood* factor 2 ("the reasonable number of hours expended in the case"), in that order. *Smith*, 481 Mich at 530-531

(opinion by TAYLOR, C.J.). And then, our Supreme Court directed that the trial court should consider the remaining *Wood* and MRPC factors. *Id.* at 531. Our Supreme Court reminded trial courts to discuss the *Wood* and MRPC 1.5(a) factors in a manner sufficient "to aid appellate review . . . ." *Id.*

A meaningful application of the factors is more than a recitation of those factors prefaced by a statement such as "after careful review of the criteria the ultimate finding is as follows . . . ." Similarly, an analysis is not sufficient if it consists merely of the recitation of the factors followed by a conclusory statement that "the trial court has considered the factors and holds as follows . . ." without clearly setting forth a substantive analysis of the factors on the record. The trial court should consider the interplay between the factors and how they relate to the client, the case, and even the larger legal community.

Here, the trial court acknowledged the fee-consideration factors, but provided little analysis or insight into the application of those factors to the client or the case. By way of example, the trial court noted that the fee agreement was contingent. MRPC 1.5(a)(8). Aside from that observation, the trial court presented no other information and did not explain the import of the fact that the fee agreement was contingent in the context of its determination of fees. It might be an insightful exercise for a trial court to look at what the fee would have been on such a basis and compare that to the fee actually being sought.

The trial court also commented that the attorney achieved "good" results from this litigation as well as from a prior dispute involving the same insurance carrier. In its discussion of *Wood* factor 3 ("the amount in question and the results achieved"), in assessing

attorney fees, this Court has stated that a reasonable fee is proportionate to the results achieved. The trial court may in its discretion adjust fees upward or downward. *Schellenberg v Rochester, Mich, Elks Lodge No 2225,* 228 Mich App 20, 44-45; 577 NW2d 163 (1998). Rather than making a blanket announcement that the result of the litigation was "good," the trial court was charged with evaluating the results obtained in the context of the claim presented. For example, in the instant case, plaintiff claimed $929,000 in attendant-care services at a rate of $25 an hour. The jury awarded $371,700 for those services. At $929,000 and $25 an hour, the total hours claimed would amount to 37,160 hours. The amount awarded, $371,700, when compared to 37,160 hours produces an effective hourly rate of just over $10 an hour. At the time of the termination of benefits when plaintiff refused to provide an update regarding the need for and the amount of the attendant-care services required, defendant was paying $18 an hour for attendant-care services. While this mathematical review may not necessarily reflect the jury's analysis of the case, the jury may have determined a higher rate for services, but fewer hours, such an analysis may be beneficial when determining an attorney-fee rate with an upward or downward departure.

The trial court also commented that counsel had a long relationship with the client, having represented her in a previous attendant-care dispute with the same carrier. The nature and length of the professional relationship with the client is considered in both MRPC 1.5(a)(6) and *Wood* factor 6. *Smith,* 481 Mich at 529-530 (opinion by TAYLOR, C.J.). A long and storied professional relationship has many implications. While we do not endeavor to paint with a broad brush, practicality compels us to point out that knowledge gained in

previous litigation involving the same attorney, client, and opposing insurance carrier may result in certain efficiencies. Further, it is not uncommon in the practice of law to provide discounted fees to repeat clients for these same reasons. Fairness dictates that under these and similar circumstances, the trial court may want to consider whether any services performed were unnecessarily duplicative.

When a trial court entertains a discussion of attorney-fee factors and analyzes those factors by way of a searching inquiry into the record evidence, the parties benefit by receiving a true and fair attorney-fee award. Additionally, in the event of a challenge, the appellate process will be enhanced because we will have the opportunity for meaningful review. Our discussion is not exhaustive, and is only provided as a representative method that trial court's may consider in performing attorney-fee analysis in accordance with our Supreme Court's directives in *Smith*, 481 Mich at 530-531 (opinion by TAYLOR, C.J.).

## IV. CONCLUSION

We conclude that the trial court abused its discretion by failing to provide defendant limited discovery in order to allow a meaningful examination of the issue of an award of attorney fees pursuant to MCL 500.3148(1). The trial court also abused its discretion because it misapprehended the law to be applied and the award of attorney fees was inconsistent with our remand directive. The trial court abused its discretion by admitting the four letters by the attorneys into evidence because they were neither admissible under MRE 803(6) nor admissible under 803(24). And, the trial court clearly erred in its award of attorney fees

because the assessment of the work performed and the number of hours expended both fail for want of evidentiary support.

We vacate the trial court's award of attorney fees and remand this case to the trial court for rehearing and redetermination in accordance with this opinion. We direct the trial court to make specific findings, consistent with *Smith*, for each attorney whose fees plaintiff sought to recover. We refer this matter, on remand, to the Honorable Nanci J. Grant, the trial judge assigned in this matter, rather than a visiting judge.

Defendant may tax costs as the prevailing party pursuant to MCR 7.219. We do not retain jurisdiction.

CAVANAGH and STEPHENS, JJ., concurred with DONOFRIO, P.J.