*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SRC, Minor.

UNPUBLISHED
February 27, 2020

No. 348774
Eaton Circuit Court
Family Division
LC No. 18-020073-NA

Before: FORT HOOD, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Respondent appeals by right the trial court's April 23, 2019 order terminating his parental rights to his daughter under MCL 712A.19b(3)(b)(*i*) (physical injury or sexual abuse), (j) (likelihood of harm if child returned to parent), and (k)(*ii*) (criminal sexual conduct against the child involving penetration).[1] We affirm.

## I. FACTUAL BACKGROUND

During her early life, the child was primarily raised by her maternal grandmother, who had a legal guardianship. After the child's legal guardianship was terminated and respondent began receiving overnights, her grandmother noticed concerning changes in the child's behavior. In July 2018, when the child was nearly four years old, she disclosed that respondent had "poked" her vaginal area with a "pencil." After a forensic examination, a safety plan was put in place under which respondent was not to be alone with the child. However, in September 2018, the child told her counselor that respondent had "peed" on her face, and among other things, respondent made her swallow and it tasted bad. The child also disclosed that respondent had put a pencil in her vagina and in her butt, and that the pencil made a buzzing noise. The child's counselor indicated that the child was very afraid because respondent's girlfriend told her that if she talked about it, she would be thrown in jail, shot in the face, and die. A petition was filed seeking to terminate respondent's parental rights. Respondent argued that the child was coached by her grandmother

---

[1] In light of the allegations of sexual abuse, in order to protect the privacy of the minor child, we identify her by only her initials in the caption of this opinion.

and mother in response to his filing of custody motions. Following an adjudication trial by jury, the trial court terminated respondent's parental rights at the initial disposition.

## II. INVOLVEMENT OF THE NONRESPONDENT PARENT

Respondent argues that the trial court violated his due-process rights by allowing the child's mother to sit at the counsel table, where he alleges she reacted emotionally to testimony, and allowing her attorney to cross-examine witnesses. Respondent's arguments rest on the premise that the child's mother was not a party to the proceedings. Respondent is mistaken. Regardless, the record does not support his assertion that the child's mother cross-examined the witnesses or reacted emotionally to the testimony.

As an initial matter, we note that respondent has not preserved this issue. A parent must raise an issue before the trial court for it to be preserved for appellate review. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). To preserve an issue, the appellant must challenge the issue before the trial court on the same ground as he or she challenges it on appeal. See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). In this case, respondent asked the trial court how it intended to treat the child's mother, and the trial court indicated that she was a party and it would allow her attorney to ask questions with permission. Respondent moved to sequester the child's mother on the basis that she was a potential witness who might give testimony. The court held that, because she was a party, the child's mother could remain in the courtroom. Respondent has not preserved these issues because he did not argue that the child's mother was not a party, that she could not sit at the counsel table, or that her presence violated his due-process rights. This Court reviews unpreserved constitutional claims for plain error affecting the parent's substantial rights. See *TK*, 306 Mich App at 703.

Respondent incorrectly asserts that the child's mother was not a party to the proceedings. In child-protective proceedings, a "party" includes a "petitioner, child, respondent, *and parent*, guardian, or legal custodial in a protective proceeding." MCR 3.903(A)(19)(b) (emphasis added). It is possible for a person to be both a parent and not a respondent to the proceedings. See MCR 3.903(C)(8) (defining "nonrespondent parent" as "a parent who is not named as a respondent in a petition filed under MCR 712A.2(b)"). "A parent whose parental rights have not been terminated, including one who is not a named respondent, must be notified of and permitted to participate in each hearing, including dispositional review hearings, permanency planning hearings, and termination proceedings." *In re Rood*, 483 Mich 73, 94; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.). As a parent, the child's mother was a party to the proceedings, and she was entitled to participate in hearings.

Regardless, the record does not support respondent's assertions that the child's mother cross-examined witnesses or reacted emotionally to testimony. The party seeking reversal on appeal has the burden to provide the court with a record that establishes the factual basis of his or her argument. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). In this case, the trial court indicated that it would allow the mother's attorney to ask questions with permission. The attorney gave a brief opening statement in which he stated that the mother was not a respondent. He also encouraged the jury to pay attention to the facts and decide the case on the basis of the evidence. Subsequently, the mother's attorney did not question any witness or give a closing

statement.[2]  The record is also devoid of any indications that the child's mother reacted to witness testimony.  Respondent has not established error, much less a plain error.

## III.  EVIDENTIARY RULINGS

Respondent argues that the trial court's rulings on several evidentiary matters were erroneous.  We disagree with each of respondent's assertions.

Generally, this Court reviews for an abuse of discretion preserved challenges to the trial court's evidentiary rulings.  *Utrera*, 281 Mich App at 15.  The trial court abuses its discretion when it chooses an outcome outside the range of principled outcomes.  *Id*.  This Court also reviews for an abuse of discretion the trial court's decision on a discovery motion.  *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011).  This Court reviews de novo preliminary questions of law concerning the admission of evidence.  See *In re Archer*, 277 Mich App 71, 77; 744 NW2d 1 (2007).

First, respondent sought an independent psychological examination of the child on the basis that it was necessary to determine her whether she was mature enough to differentiate between the truth and a lie, and thus competent, and able to be credible versus coached. The trial court did not err by refusing to grant respondent's motion.

Every person is competent to be a witness unless the person does not have "sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably[.]" MRE 601.  A trial court may, on the motion of a party, appoint an expert witness.  MRE 706(a).  Generally, Michigan follows a policy of open and broad discovery.  *Augustine*, 292 Mich App at 410.  A motion seeking a court-appointed expert must be accompanied by a showing that the appointment of an independent expert is necessary.  *In re Bell*, 138 Mich App at 187-188; 360 NW2d 868.[3]  A respondent may accomplish this by a showing that the petitioner's expert was biased or prejudiced against him, by disputing with particularity the petitioner expert's opinions, or by showing that a proposed expert witness would testify in his favor.  *Id*.  Put simply, the trial court does not abuse its discretion by denying a motion to appoint an expert witness if the movant has failed to establish the need for one such that failure to appoint causes an injustice under the presenting circumstances.  *Id*.

The trial court's decision to deny respondent's motion for an independent psychological evaluation did not fall outside the range of reasonable outcomes because respondent did not establish that an expert would testify on his behalf or that the existing experts were biased against

---

[2] We note that it is possible that respondent has confused the mother's attorney with the child's guardian ad litem, who did question and cross-examine witnesses during the trial.

[3] This Court is not bound to follow decisions of this Court decided before November 1, 1990, under the rules of stare decisis.  See *2000 Baum Family Trust v Babel*, 488 Mich 136, 180 n 26; 793 NW2d 633 (2010).  Because there are relatively few cases on this topic, we consider this case as persuasive precedent.

him. Regardless, the trial court determined that the child was competent to act as a witness on the basis of her answers during a forensic interview, at which she accurately distinguished between a truth and a lie when the interviewer questioned her about several examples. The court's reliance on existing facts to establish the child's capacity as a witness also did not fall outside the range of reasonable outcomes.

Respondent argues that the psychological evaluation was necessary to determine whether the child's statements, which were at points inconsistent, were credible. We reject that a psychological evaluation would be the proper method to challenge the child's credibility. A competent child's inability to testify truthfully "reflects on credibility, not competency." See *People v Watson*, 245 Mich App 572, 583; 629 NW2d 411 (2001). Conflicting witness testimony creates an issue of credibility, which is for the trier of fact to determine. See *People v Lemmon*, 456 Mich 625, 642-643; 576 NW2d 129 (1998). Respondent was able to establish during the jury trial that the child's statements were at points inconsistent. Respondent also established the existence of his contentious relationship with the child's grandmother and mother and that a Michigan State Police trooper believed the child was being coached. He was able to argue his theory on each of these points in closing. We conclude that respondent has not established that the trial court's decision not to order an independent psychological examination of the child was erroneous or prejudiced him.

Second, respondent argues that the trial court erred by admitting the child's statements through other witnesses. We disagree because the trial court considered appropriate factors before determining that the child's statements were admissible.

MCR 3.972(C)(2) provides that any statement made by a child under 10 years old regarding an act of sexual abuse "may be admitted into evidence through the testimony of a person who heard the child make the statement as provided in this subrule."

> A statement describing such conduct may be admitted regardless of whether the child is available to testify or not, and is substantive evidence of the act or omission if the court has found, in a hearing held before trial, that the circumstances surrounding the giving of the statement provide adequate indicia of trustworthiness. This statement may be received by the court in lieu of or in addition to the child's testimony. [MCR 3.972(C)(2)(a).]

Whether a child's statement is reliable depends on the totality of the circumstances around the child's statement. *Archer*, 277 Mich App at 82. "Circumstances indicating the reliability of a hearsay statement may include spontaneity, consistent repetition, the mental state of the declarant, use of terminology unexpected of a child of a similar age, and lack of motive to fabricate." *Id*.

We reject respondent's argument that the trial court erred by admitting the child's statements without requiring her to testify at an evidentiary hearing, and instead relying on other witnesses to establish the reliability of her statement. The court rule allowing admission of a child's statements about sexual abuse expressly provides that the statement may be admitted through the testimony of a person who heard the child and that "[t]his statement may be received by the court *in lieu of* or in addition to the child's testimony," MCR 3.972(C)(2)(a) (emphasis

added). The rule only requires the trial court to hold a hearing. It does not mandate the court to require the child to testify at that hearing rather than making its determination on the basis of the existing testimony.

In this case, when deciding whether to admit the child's statement, the trial court considered her terminology, the consistency of her statements—which were remarkably consistent in the acts they alleged, though they were inconsistent in some minor details—and the child's lack of motive to fabricate the allegations. The trial court's decision fell within the range of reasonable outcomes because it considered appropriate factors and properly applied the court rule.

Third, respondent argues that the trial court abused its discretion by failing to admit "the CPS reports." An error involving the exclusion of evidence only warrants reversal if it affirmatively appears that it is more probable than not that the error was outcome-determinative. See *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). An error is outcome-determinative when it undermines the reliability of the verdict. *Id*. at 495.

While respondent argues that CPS reports should have been admitted because witnesses referred to CPS reports, the testimony about the contents of the CPS reports weighs against a determination that any failure to admit the reports prejudiced respondent. A CPS investigator testified about and was cross-examined about the July and September 2018 reports.[4] Even presuming that the court erred by refusing to admit the reports, because the CPS investigator was able to testify about the contents of the CPS reports, did testify, and was subject to cross-examination on them, on the basis of the record before us, it does not affirmatively appear that any error in excluding the reports was outcome-determinative error.

Fourth, respondent argues that the trial court's reference to a polygraph examination during respondent's testimony was reversible error. We conclude that any error was not reversible.

In the criminal context, "reference to a polygraph test is not admissible before a jury." *People v Nash*, 244 Mich App 93, 98; 625 NW2d 87 (2000).[5] However, such reference "does not always constitute error requiring reversal." *Id*. Whether reference to a polygraph test requires reversal depends on whether the defendant objected and sought a cautionary instruction, whether the reference was inadvertent, whether there were repeated references, whether the reference was

---

[4] While the July 2018 CPS report was authored by a different investigator, the CPS investigator testified, without objection, about the contents of the report, stating that it was a single-page report that contained an allegation that respondent and his girlfriend had sex while the child was in the bed and poked the child's vagina with a pencil. The investigator testified that the prior investigator concluded that the allegations were unsubstantiated.

[5] This Court has applied protections in criminal proceedings to child-protective proceedings by analogy. See *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016) (concerning ineffective assistance of counsel).

an attempt to bolster a witness's credibility, and whether the results of the test were mentioned rather than merely that a test was taken. *Id.*

In this case, during the direct examination by respondent's counsel of the Michigan State Police trooper, the following exchange took place:

> *Q.* Okay. And did your investigation of this third complaint [sic] uncover any evidence that [respondent] was not telling the truth?
>
> [*Guardian ad litem*]. I'm going to object. I don't know if there's been a proper foundation laid as to whether or not this trooper was the one that conducted the third interview.
>
> [*Defense counsel*]. I'm not talking about the interview. I said in the course of his investigation, did he discover evidence of whether or not [respondent] was not telling the truth.
>
> [*Guardian ad litem*]. Understood.
>
> THE COURT. We talking polygraph exams?
>
> [*Defense counsel*]. I'm talking about in the course of his exam—of—of his, uh, his investigation.

The parties then approached for a bench conference, after which questioning resumed. The trooper subsequently testified that charges had been filed but no warrant had been issued for respondent's arrest.

Considering the *Nash* factors, none of these factors weigh in favor of reversal. Respondent did not object to the reference or request a cautionary instruction, the reference was inadvertent, the reference was singular, the reference was not related to any witness's credibility, and the results of the test were not mentioned. Accordingly, while the trial court's reference to a polygraph test was improper, it is not reversible error.

Finally, to the extent that respondent additionally argues that the trial court was prejudiced against him, we reject this assertion. A party abandons its assertions when it fails to include the issue in his or her statement of questions presented and fails to provide any authority to support its assertions. See *People v King*, 297 Mich App 465, 474; 824 NW2d 258 (2012); *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000). Respondent's assertion consists of a one-sentence speculation in respondent's appellate brief. He did not raise a bias issue before the

trial court or in his statement of questions presented, and he has provided no authority to support his assertion. We conclude that he has abandoned it.[6]

Affirmed.

/s/ Karen M. Fort Hood
/s/ Jane M. Beckering
/s/ Mark T. Boonstra

---

[6] Regardless, to demonstrate bias, a party must establish that that the judge is unable to make fair rulings, or has a hostility or deep-seated antagonism toward the party, and judicial rulings against a party almost never constitute bias. *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011). Respondent's allegation rests on a single ruling against him. There is no deep-seated antagonism apparent from the record.