# STATE OF MICHIGAN

# COURT OF APPEALS

SAMIR WARDA and SUNDUS WARDA,

Plaintiffs-Appellants,

v

HOWARD T. LINDEN, and HOWARD T. LINDEN, PC,

Defendants-Appellees.

UNPUBLISHED
May 15, 2018

No. 336918
Oakland Circuit Court
LC No. 2016-154887-NM

SAMIR WARDA,

Plaintiff-Appellant,

and

DAVID FINDLING, as receiver to SAMIR WARDA,

Appellant,

v

FIEGER & FIEGER, PC (also known as FIEGER LAW and FIEGER FIEGER KENNEY & HARRINGTON, PC) and JAMES J. HARRINGTON, IV,

Defendants-Appellees.

No. 338074
Oakland Circuit Court
LC No. 2016-152174-NM

CAROL A MORRIS, as special fiduciary for SAMIR WARDA ESTATE, SAMIR WARDA, SUNDUS WARDA,

Plaintiffs-Appellants,

v

No. 338075

-1-

FIEGER & FIEGER, PC (also known as FIEGER LAW and FIEGER FIEGER KENNEY & HARRINGTON, PC) and JAMES J. HARRINGTON, IV, HOWARD T. LINDEN, and HOWARD T. LINDEN, PC,

Defendants-Appellees.

Before:  O'CONNELL, P.J., and HOEKSTRA and K. F. KELLY, JJ.

PER CURIAM.

In Docket No. 336918, plaintiffs, Samir Warda ("Samir") and Sundus Warda ("Sundus"), appeal as of right a January 5, 2017 order entered by Oakland Circuit Court Judge Martha D. Anderson, which granted summary disposition in favor of defendants, Howard T. Linden and Howard T. Linden, PC (collectively "Linden defendants"), in plaintiffs' legal malpractice action.

In Docket No. 338074, Samir appeals of right an April 24, 2017 order entered by Oakland Circuit Court Judge Shalina D. Kumar, which granted summary disposition in favor of defendants, James J. Harrington IV, Fieger & Fieger PC (a/k/a Fieger Law and Fieger Fieger Kenney & Harrington PC) (collectively "Fieger defendants"), in Samir's legal malpractice action.

Finally, in Docket No. 338075, Carol Morris, as special fiduciary of Samir's estate, Samir, and Sundus, appeals the April 24, 2017 order, which also granted summary disposition in favor of the Fieger and the Linden defendants.

Finding no errors warranting reversal, we affirm.

## I.  BASIC FACTS

Samir was injured when he was struck by a vehicle in September 2012.  He hired the Fieger defendants to sue his insurer, QBE Insurance Company, in a first-party no-fault action. While that action was pending, his sister, Sundus was appointed his conservator and was substituted as the named plaintiff in the action.  The Linden defendants handled the probate matter.  The first-party claim settled for $490,000, which included a waiver of future no-fault benefits.  The Fieger defendants warned Sundus that she needed to handle the settlement proceeds with care and make sure to pay Samir's medical expenses.

The Fieger defendants also pursued a third-party no-fault action against the driver, with Sundus named as conservator.  The Fieger defendants obtained a default against the driver but withdrew from representation after the attorney-client relationship broke down.

Sundus did not properly manage the settlement proceeds and was suspended as conservator.  The probate court ordered both Sundus and Samir to pay a $300,000 judgment in

favor of the case management company and, when they failed to do so, ordered them jailed for contempt.

## A. THE FIRST MALPRACTICE SUIT

On March 24, 2016, Samir, individually, filed a malpractice lawsuit against the Fieger defendants, claiming that Fieger: (1) improperly advised Samir to settle the first-party action; (2) failed to timely pursue the at-fault driver; (3) failed to investigate the extent of Samir's injuries; (4) recommended a case management services company that over-charged; (5) recommended the Linden defendants who also over-charged; and (6) failed to ensure that Sundus would properly distribute the settlement money to ensure that outstanding financial obligations were fully satisfied.

Citing *Maki v Coen,* 318 Mich App 532; 899 NW2d 111 (2017), Judge Kumar concluded that dismissal was appropriate because there was no attorney-client relationship between Samir and the Fieger defendants and, as a result, Samir was not the real party in interest. Judge Kumar also concluded that any attempt to amend the complaint to include a claim as a third-party beneficiary would have been futile because Samir was not the sole beneficiary of the legal services provided.

## B. THE SECOND MALPRACTICE ACTION

On September 2, 2016, Samir (individually and by his next friend Sundus) and Sundus, filed a legal malpractice lawsuit against the Linden defendants arising out of the first-party no-fault case. The allegations against the Linden defendants were similar to those alleged against the Fieger defendants in the first suit. The complaint alleged that the Linden defendants: (1) failed to advise plaintiffs not to resolve the first-party claim that included a waiver of future benefits; (2) failed to fully investigate Samir's injuries; (3) overcharged for its services; and (4) failed to ensure that the settlement funds were properly distributed.

And, while the complaint referenced the pending action before Judge Kumar, it was nevertheless assigned to Judge Anderson. Judge Anderson denied plaintiffs' motion to re-assign the case and, instead, ordered that the parties bring the matter before Judge Kumar.

In the meantime, the Linden defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(8). They argued that representation in the probate matter was with Sundus in her capacity as conservator and that Samir's claims had to be dismissed because Linden owed no duty to Samir. The Linden defendants further argued that Sundus failed to plead facts to support a claim for professional malpractice and provided only conclusory allegations in the complaint.

A December 16, 2016 scheduling order set a motion hearing for January 18, 2017, and required plaintiffs' response to be filed on or before December 29, 2016.

On January 5, 2017, Judge Anderson issued an order granting Linden's motion for summary disposition. In a footnote, Judge Anderson noted: "Plaintiffs failed to file a Response in Opposition to Defendants' Motion for Summary Disposition, despite the Court Order requiring Plaintiffs to do so on or before December 29, 2016. See Order dated December 15, 2016." After setting forth the elements for stating a valid cause of action for legal malpractice,

Judge Anderson concluded: "having reviewed Defendants' motion, brief in support and documentation attached thereto, as well as Plaintiffs' Complaint . . . Plaintiffs failed to state a claim upon which relief can be granted for legal malpractice pursuant to *Simko* [*v Blake,* 448 Mich 648; 532 NW2d 842 (1995)] and *Coleman* [*v Gurwin*, 443 Mich 59, 63; 503 NW2d 435 (1993)].

On January 6, 2017, plaintiffs filed a motion to strike the opinion and order granting defendants' motion for summary disposition and/or relief from judgment and/or reconsideration. Plaintiffs explained that Judge Kumar granted the motion to re-assign the case before Judge Anderson ruled on the motion for summary disposition. Plaintiffs claimed that they contacted Judge Anderson's staff to advise that a responsive brief would not be filed and that there was never any indication that Judge Anderson would proceed with the motion.

Judge Anderson denied plaintiffs' motion "for lack of merit on the grounds presented."

## C. THE THIRD MALPRACTICE SUIT

On December 28, 2016, while the above cases were pending, Morris, as special fiduciary for Samir's estate, Samir, and Sundus, filed a legal malpractice action against both the Fieger defendants and the Linden defendants. Although the case was originally assigned to Judge Leo Bowman, he re-assigned it to Judge Kumar. The allegations in the complaint were essentially identical to those made in the first and second malpractice actions.

In an April 24, 2017 opinion and order, Judge Kumar granted defendants summary disposition on all of the claims in the first and third lawsuits. She agreed that the complaint had to be dismissed as to the Linden defendants pursuant to MCR 2.116(C)(6) because the parties and allegations in the third action were substantially the same as in the second action. As with the first lawsuit, she concluded that neither Samir nor his estate had an attorney-client relationship with the Linden defendants or the Fieger defendants and, therefore, neither Samir nor the estate could state a claim for legal malpractice. Judge Kumar added that, even if Sundus's claim against the Linden defendants was not barred by the second action, her claims were barred under MCR 2.116(C)(7) because the statute of limitations had expired.

Judge Kumar noted that the only viable claim was Sundus's allegations against the Fieger defendants in the third malpractice action. Although the Fieger defendants had argued that summary disposition was appropriate under (C)(8), Judge Kumar concluded that the motion, which included documentary evidence, was also properly analyzed pursuant to (C)(10). She concluded that Sundus failed to state a valid claim because, although Sundus had an attorney-client relationship with the Fieger Defendants, she did not allege (nor could she prove) how the Fieger Defendants breached any duty owed to her or how the alleged breaches were the proximate cause of her injuries.

## II. JUDGE ANDERSON'S FAILURE TO RE-ASSIGN THE CASE

In Docket No. 336918, Samir and Sundus argue that Judge Anderson erred when she denied their motion to transfer the case to Judge Kumar. We disagree.

-4-

A trial court's decision refusing to re-assign a case to a different judge is reviewed for an abuse of discretion. *Salvadore v Connor,* 87 Mich App 664, 671; 276 NW2d 458 (1978). The abuse of discretion standard "acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d (2006). An abuse of discretion "occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011).

While Judge Kumar agreed that it made sense that both cases should be before her, she did not immediately enter an order to that effect because of controversy over the extent of the transfer and consolidation. The Linden defendants' attorney believed the transfer and consolidation was for discovery purposes, only. The parties could not agree on an order and, while the matter was still being resolved, Judge Anderson granted summary disposition in the second suit.

"The rule is well established that courts speak through their judgments and decrees, not their oral statements or written opinions." *Tiedman v Tiedman*, 400 Mich 571, 576; 255 NW2d 632 (1977). The "harm" to plaintiffs was not the result of Judge Anderson's perfectly acceptable decision to defer to the receiving judge; instead, plaintiffs take issue with the consequence of failing to enter an order prior to Judge Anderson's summary disposition decision. The fault cannot lie with Judge Anderson, as she did not abuse her discretion in denying the motion to re-assign without prejudice in order to allow Judge Kumar to consider and decide the motion.

That Judge Bowman immediately granted the motion to transfer when the third action was initially assigned to him is of no moment. Again, the abuse of discretion standard "acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *Maldonado,* 476 Mich at 388.

### III. JUDGE ANDERSON'S DENIAL OF RELIEF FROM JUDGMENT

In Docket No. 336918, Samir and Sundus argue that Judge Anderson erred in granting summary disposition and further erred in failing to set aside the judgment in light of the unique procedural posture of the case. We disagree.

An appellate court "reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law. In making this determination, the Court reviews the entire record to determine whether defendant was entitled to summary disposition." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Judge Anderson granted the Linden defendants' motion for summary disposition pursuant to MCR 2.116(C)(8).

> Summary disposition is proper under MCR 2.116(C)(8) if the opposing party has failed to state a claim on which relief can be granted. A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint and allows consideration of only the pleadings. For purposes of reviewing a

-5-

motion for summary disposition under MCR 2.116(C)(8), all well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may only be granted where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. [*Mays v Snyder*, ___ Mich App ___; ___ NW2d ___; (Docket No. 335555, issued January 25, 2018), slip op, pp 23-24 (citations and quotation marks omitted).]

To the extent plaintiffs' argue that the trial court committed error by adhering to the scheduling order, the trial court has discretion with regard to the enforcement of scheduling orders. *Edi Holdings LLC v Lear Corp*, 469 Mich 1021; 678 NW2d 440 (2004). As such, an appellate court reviews for an abuse of discretion a trial court's decision to decline to accept motions, pleadings and documents filed after the deadline set forth in its scheduling order. *Kemerko Clawson LLC v RXIV Inc*, 269 Mich App 347, 349; 711 NW2d 801 (2005).

Likewise, Judge Anderson's decision denying plaintiffs' motion for reconsideration is reviewed for an abuse of discretion. *Ensink v Mecosta Co Gen Hosp*, 262 Mich App 518, 540; 687 NW2d 143 (2004). The moving party seeking reconsideration "must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error." MCR. 2.119(F)(3).

Plaintiffs argue that "[c]learly, there was a mistake, inadvertence and excusable neglect by Plaintiffs' counsel and perhaps the court staff in expecting that Judge Anderson would not rule on a pending motion for summary disposition in light of the granting of the motion to transfer the case to Judge Kumar." Their primary argument is that Judge Anderson abused her discretion when she denied their motion for reconsideration.

However, MCR 2.119(F)(3) provides that the party seeking reconsideration "must demonstrate a *palpable error* by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error." MCR. 2.119(F)(3). "'Palpable' is defined as '[e]asily perceptible, plain, obvious, readily visible, noticeable, patent, distinct, manifest.'" *Luckow v Luckow*, 291 Mich App 417, 426; 805 NW2d 453 (2011). Under the court rule, the trial court has "considerable discretion in granting reconsideration to correct mistakes, to preserve judicial economy, and to minimize costs to the parties." *Sanders v McLaren-Macomb*, ___ Mich App ___; ___ NW2d ___ (Docket No. 336409, issued February 27, 2018), slip op, p 5. The court rule does not speak of counsel's inadvertence or excusable neglect; it speaks of error.

The fact remains that Judge Kumar never entered an order transferring the case because the parties could not agree on an order. Again, a court speaks through its written orders. *Tiedman*, 400 Mich at 576. Because an order to reassign the case to Judge Kumar had not been entered, Judge Anderson retained the case and there was no justification for ignoring her briefing schedule. Pursuant to MCR 2.401(B)(2)(a)(*ii*), a trial court may establish times for events the court deems appropriate, including the filing of motions. MCR 2.401(D) further provides that a "court may direct the attorneys to furnish trial briefs as to any or all of the issues involved in the action." The trial court has discretion regarding enforcement of its scheduling orders and is justified in refusing to consider pleadings or actions beyond the set time frame. *Edi Holdings*,

469 Mich 1021; *Prussing v Gen Motors Corp*, 403 Mich 366, 370; 269 NW2d 181 (1978); *Flanagin v Kalkaska Co Rd Comm*, 319 Mich App 633, 640; 904 NW2d 427 (2017). Otherwise, "scheduling orders would quickly become meaningless." *People v Grove*, 455 Mich 439, 469; 566 NW2d 547, 560 (1997) superseded by statute as stated in *People v Franklin*, 491 Mich 916; 813 NW2d 285 (2012); see also *Kemerko*, 269 Mich App at 350-351. Moreover, a trial court does not abuse its discretion by failing to consider the availability of alternative remedies. *Edi Holdings*, 469 Mich at 1021.

Having concluded that Judge Anderson did not err in denying the motion for reconsideration, the issue becomes whether she erred in granting summary disposition in the first place.

It is true that Judge Anderson's opinion lacks any real discussion or application of the facts to the law. It is necessary, then, to examine the two bases for the Linden defendants' request for summary disposition. The first was that there was no duty owed to Samir. The second was that Sundus's allegations were too conclusory to state a claim for professional malpractice.

Our Supreme Court has held that:

> In order to state an action for legal malpractice, the plaintiff has the burden of adequately alleging the following elements:
>
> (1) the existence of an attorney-client relationship;
>
> (2) negligence in the legal representation of the plaintiff;
>
> (3) that the negligence was a proximate cause of an injury; and
>
> (4) the fact and extent of the injury alleged. [*Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842, 846 (1995), quoting *Coleman v Gurwin,* 443 Mich 59, 63, 503 NW2d 435 (1993).]

As to the first element, "[i]n legal malpractice actions, a duty exists, as a matter of law, if there is an attorney-client relationship." *Simko*, 448 Mich at 655. Judge Anderson issued her opinion and order just days before this Court's decision in *Maki*. The *Maki* decision confirms that summary disposition was appropriate as to Samir because there was no attorney-client relationship between Samir and the Linden defendants and, therefore, no duty owed.

In *Maki*, the family of a child born with a congenital heart defect brought a malpractice action against certain medical care providers that resulted in settlement. The settlement provided for an immediate cash payment as well as regular payments from a structured annuity. The child's mother was the conservator. The mother failed to account for the annual funds during the conservatorship, allegedly on the advice of her attorney. The child's father sued the attorney and others, alleging that the attorneys owed the child a duty of care as their client and that they violated that duty in connection with the legal services afforded the mother during the conservatorship. *Maki*, 318 Mich App at 535-536. The trial court concluded that only the mother, as conservator, had standing to sue the former attorneys and granted summary

disposition in favor of the defendants. *Id.* at 537. On appeal, this Court rejected the argument that the estate was the real party in interest either as the actual client or as a third-party beneficiary. *Id.* at 539.

Citing § 700.5423(2)(z) of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 et seq., and MCR 5.117(A), this Court held that "an attorney hired to perform legal services for a conservator represents the conservator and does not have an attorney-client relationship with the estate." *Maki*, 318 Mich App at 540. Under MCL 700.5423(2)(z), a conservator may:

> [e]mploy an attorney to perform necessary legal services or to advise or assist the conservator in the performance of the conservator's administrative duties, even if the attorney is associated with the conservator, and act without independent investigation upon the attorney's recommendation. An attorney employed under this subdivision shall receive reasonable compensation for his or her employment.

The Court noted that "[t]he statute clarifies that the attorney performs legal services for the conservator and that the attorney advises or assists the conservator in the performance of his or her duties. This language focuses solely on the services and assistance provided to the *conservator*, which establishes that the attorney represents the conservator in the performance of his or her duties." *Maki*, 318 Mich App at 541. The Court repeated: "the plain language of the statute establishes that an attorney hired by a conservator represents the conservator, and the attorney does not have an attorney-client relationship with the estate. *Id*.

MCR 5.117(A) provides that "[a]n attorney filing an appearance on behalf of a fiduciary shall represent the fiduciary." The *Maki* Court concluded that "[t]he plain language of this court rule is clear that an attorney appearing in the probate court on behalf of a conservator represents the conservator rather than the estate." *Maki*, 318 Mich App at 541. For a third time, this Court concluded: "that the plain language of the relevant statute and court rule establishes that an attorney employed by the conservator represents the conservator and not the estate." *Id*. at 541-542.

This Court acknowledged that there is an exception to the general rule that an attorney is only liable to his client. For example, "beneficiaries named in a will may bring a tort-based cause of action against the attorney who drafted the will for negligent breach of the standard of care owed to the beneficiary by nature of the beneficiary's third-party beneficiary status." *Maki*, 318 Mich App at 543, quoting *Mieras v DeBona*, 452 Mich 278; 550 NW2d 202 (1996). However, the Court added that the duty owed to named beneficiaries for wills and other estate planning documents was "narrow" and that the plaintiff "cites no caselaw extending this third-party beneficiary exception to anyone other than the named beneficiaries of a testamentary instrument that does not effectuate the intent of the testator." *Maki*, 318 Mich App at 543. Moreover, any benefit to a third-party beneficiation had to be direct, and not incidental or indirect. *Id.* In fact, even "knowledge of a benefit to a third party is not enough" and the plaintiff's failure to plead status as a third-party beneficiary of a contract between the attorney and the mother "is fatal to its third-party beneficiary theory of malpractice liability." *Id*. 544. Because Samir was not a named beneficiary of a testamentary instrument, the exception does not apply.

In light of the *Maki* decision, Samir was not a real party in interest and summary disposition for failure to state a claim was appropriate.

In contrast, Sundus had an established attorney-client relationship with the Linden defendants and *Maki* was not an impediment to her claims. However, the Linden defendants had argued that the allegations in her complaint were so conclusory that they failed to state a claim for which relief may be granted.

In their brief on appeal, plaintiffs write: "As stated within Plaintiff's [sic] response to these defendants [sic] motion filed in the Special Fiduciary case (#2016-156579-NM) and in the Receiver's motion for relief there are sufficient factual developments that justify relief on behalf of the Wardas." They also complain "nor was there an opportunity to amend pursuant to MCR 2.118(A)(2)." These cursory statements do not adequately brief the subject and we would be justified in declining to consider the issue. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) ("Generally, where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court.")

In any event, plaintiffs' allegations failed to state a valid claim. In *Kloian v Schwartz*, 272 Mich App 232, 240; 725 NW2d 671 (2006), this Court addressed a similar issue. The plaintiff sued her attorneys for their representation in a legal malpractice suit and a separate contract fee dispute. One of the issues on appeal was whether the trial court erred in granting summary disposition for failure to state a claim. This Court concluded that it did not, even though the plaintiff's complaint adequately stated allegations setting forth negligence in the representation. "Although some of plaintiff's factual allegations are conclusory, they identify several specific instances of alleged negligence, including allegations that defendants failed to notify plaintiff of a motion to appoint a guardian ad litem, refused to file a motion to determine the balance due on a land contract, refused to argue a motion to add necessary parties, and refused to file a motion to eliminate claims of exemplary damages." *Id*. at 240. But the Court added that the complaint was deficient in establishing how the negligence was the proximate cause of the plaintiff's injury as well as the extent of her injury. *Id*. The *Kloian* Court explained:

> With respect to the third and fourth elements of a legal malpractice claim, however, plaintiff's conclusory allegations are insufficient to state a cause of action. Plaintiff was required to allege that defendants' negligence proximately caused an injury, as well as to state the extent of that injury. With respect to these elements, plaintiff's complaint states:
>
> > As a result of the violation of the standard of care described above in [the Washtenaw County case] and [the Wayne County case], Plaintiff Kloian has been damaged directly and proximately in his peace of mind, property, standing in the community, standing in the Courts and impairment of choses in action. He has incurred the following items of damage:
> >
> > (a) Damage to his property and his ability to generate income.
> >
> > (b) Attorneys' fees.

(c) Lost income.

(d) Mental anguish and emotional distress.

(e) Humiliation, mortification, shock and fright.

This conclusory paragraph, unsupported by factual allegations, is insufficient to satisfy the proximate-cause or injury elements of a legal malpractice action. Plaintiff failed to include factual allegations regarding how the specific instances of alleged malpractice caused the alleged injuries. Plaintiff's complaint is silent regarding the effect, if any, of the alleged instances of negligence on the outcome or resolution of the underlying Washtenaw County case. A mere statement of a pleader's conclusions, unsupported by allegations of fact, will not suffice to state a cause of action. Summary disposition was properly granted under MCR 2.116(C)(8). [*Kloian*, 272 Mich App at 240-241 (quotation marks and citation omitted).]

Sundus failed to plead facts to support a claim for professional malpractice and provided only conclusory allegations in the complaint. For example, she claimed that she was overcharged, but does not claim that she paid more than was owed. She also alleged that the Linden defendants caused her to be jailed for contempt of court, but failed to allege any facts suggesting how Linden caused the incarceration. Instead of asking for an opportunity to amend and instead of filing a responsive brief to the Linden defendants' motion for summary disposition, plaintiffs relied on their inadequate complaint, which was deficient in asserting a valid claim for professional malpractice.

## IV. JUDGE KUMAR'S ORDER GRANTING SUMMARY DISPOSITION

In Docket Nos. 338074 and 338075, the various plaintiffs argue that Judge Kumar erred in granting summary disposition. Judge Kumar dismissed Samir's claims and those of his estate in the first and third malpractice suits because neither Samir nor the estate was the real party in interest. Our Court has recently stated:

We review de novo a motion for summary disposition. A motion for summary disposition asserting a real-party-in-interest argument falls under either MCR 2.116(C)(8) or (10) , depending on the pleadings and other circumstances of the case. This case presented the legal issue of whether an attorney hired by a conservator represents the conservator or the estate. Accordingly, summary disposition was properly considered under MCR 2.116(C)(8). MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. However, it is insufficient to allege unsupported legal conclusions. [*Maki*, 318 Mich App at 538 (internal quotation marks and citations omitted).]

-10-

After discussing *Maki*, Judge Kumar noted:

> [N]either Samir Warda nor his estate had an attorney-client relationship with the Linden Defendants or with the Fieger Defendants at the time of the alleged malpractice. Plaintiffs' allegations of malpractice, which relate to settlement of the no fault action, distribution of those proceeds, representation in the probate proceedings. and prosecution of the third-party negligence action, all occurred after Sundus Warda was appointed as conservator for Samir Warda. Thus, neither Samir Warda nor his estate is the real party in interest in the First Malpractice Action or in the Third Malpractice Action and neither can state a claim for legal malpractice against the Linden Defendants or the Fieger Defendants.

> Moreover, it would be futile to allow Plaintiffs to amend their complaint in either action to allege a third-party beneficiary exception because there is no precedent extending this exception to anyone other than the named beneficiaries of a testamentary instrument. *Maki*, slip op at 6. The Linden Defendants and the Fieger Defendants' "mere knowledge" that their services might benefit Samir Warda is not enough to make him a third-party beneficiary. *Id*. As in *Beaty*, 456 Mich at 259-260, Samir Warda was not the sole and direct beneficiary of legal services provided by the Linden Defendants and the Fieger Defendants to Sundus Warda because there were creditors who also stood to benefit from the settlement proceeds in the no fault action.

> Samir Warda and his estate's claims against the Linden Defendants and the Fieger Defendants in both the First Malpractice Action and in the Third Malpractice Action are dismissed because they had no attorney-client relationship with the Linden Defendants or the Fieger Defendants at the time of the alleged malpractice and, thus, they are not the real parties in interest. The only proper plaintiff is Sundus Warda in the Third Malpractice Action. Sundus Warda asserts her claims through Carol A. Morris.

Judge Kumar correctly concluded that neither Samir nor his estate enjoyed an attorney-client relationship with the Fieger or Linden defendants. As discussed above, *Maki* clearly provides that "an attorney hired to perform legal services for a conservator represents the conservator and does not have an attorney-client relationship with the estate." *Maki*, 318 Mich App at 540.

Having fully disposed of the second malpractice suit and most of the remaining claims in the first and third lawsuits, Judge Kumar concluded that the only remaining claim was Sundus's against the Fieger defendants in the third malpractice action. Treating the Fieger defendants' motion as being brought pursuant to MCR 2.116(C)(10). A (C)(10) motion tests the factual sufficiency of a claim. *Maiden*, 461 Mich at 120. An appellate court reviews such a motion "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a

matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008) (footnotes omitted).

Judge Kumar concluded:

Sundus Warda has not stated a claim for legal malpractice against the Fieger Defendants and, even if she had, she could not prove such a claim because there are no genuine issue of material fact. Although Sundus Warda had an attorney-client relationship with the Fieger Defendants, she does not allege (nor could she prove) how the Fieger Defendants breached any duty owed to her. There is no dispute that Sundus Warda was present at the facilitation sessions in the no fault action and that she agreed to settle that case by executing the settlement agreement, which clearly stated seven times that it included a waiver of future no fault benefits. Sundus Warda does not allege that the Fieger Defendants threatened or coerced her into settling her claims or left her with no other reasonable choice but to settle. Instead, Sundus Warda alleges that the settlement amount was "deficient." While Sundus Warda may have buyer's remorse about the amount of her settlement, that cannot be the basis for this Court finding that the Fieger Defendants failed to use reasonable skill, care, discretion and judgment in representing Sundus Warda. Moreover, once the case was settled, the Fieger Defendants provided Sundus Warda with a letter stating how the settlement funds would be distributed and that the funds should be used to pay Samir Warda's outstanding and future medical bills. Sundus Warda acknowledged receipt of this letter and received the settlement funds, yet she failed to use the settlement funds for their stated purpose. Instead, she dissipated those funds for personal use, including making a down payment on a house.

Additionally, although Sundus Warda alleges that the Fieger Defendants did not "timely pursue" the at fault driver and owner of the vehicle, the documents attached to the parties' briefs and public records reflect that the Fieger Defendants filed the third-party negligence action well within the statute of limitations and secured a default against the defendant. The fact that the Fieger Defendants did not obtain a default judgment and begin collection actions before withdrawing from the case does not mean they failed to timely pursue the claims; they clearly did timely pursue the claims. Sundus Warda also makes the conclusory allegation that the Fieger Defendants failed to pursue "applicable insurance coverage." While unclear, to the extent Sundus Warda is referring to claim for uninsured or underinsured benefits in the no fault action or in the third-party negligence action, Sundus Warda does not dispute that Samir Warda was not entitled to such benefits under the terms of the applicable insurance policy.

Finally, other than her conclusory and unsupported allegations that the Fieger Defendants "engage[d]" the Linden Defendants and the case management company or that they were "agents" of the Fieger Defendants, Sundus Warda does not allege how the Fieger Defendants could control or otherwise be responsible for the Linden Defendants and the case management company allegedly overcharging Sundus Warda for their services.

-12-

Even if Sundus Warda had properly alleged that the Fieger Defendants breached a duty owed to her, she cannot allege (or prove) proximate cause in this case. Sundus Warda contends that the Fieger Defendants caused her to be unable to pay Samir Warda's medical bills, to be overcharged for case management and probate services, to be subject to a judgment in probate court, and to be incarcerated in jail. However, nothing in the complaint explain[s] how any action by the Fieger Defendants resulted in Sundus Warda being sued, being incarcerated, or being held in contempt. As set forth above, Sundus Warda agreed to a settlement and to distribution of those funds to pay for Samir Warda's medical bills and other litigation -related expenses. She does not dispute that she received the funds, but failed to use them for their intended purpose. Her own decision to squander the settlement proceeds on personal expense and failure to pay creditors resulted in the judgment in probate court and her incarceration.

For these reasons, this Court finds that Sundus Warda's claim for legal malpractice against the Fieger Defendants should be dismissed.

While an attorney is "obligated to use reasonable skill, care, discretion and judgment in representing a client," "mere errors in judgment by a lawyer are generally not grounds for a malpractice action where the attorney acts in good faith and exercises reasonable care, skill, and diligence." *Id*. at 656, 658. Therefore, "[w]here an attorney acts in good faith and in honest belief that his acts and omissions are well founded in law and are in the best interest of his client, he is not answerable for mere errors in judgment." *Id*. at 658.

Once again, plaintiffs' brief is woefully inadequate and we would be justified in declining to address this particular claim of error. *Yee*, 251 Mich App at 406; Plaintiffs devote a substantial amount of their brief to the "real party in interest" issue to the exclusion of the remainder of Judge Kumar's opinion. Plaintiffs argue only that "[i]t is not an error of judgment to inform clients that first party benefits have a policy limit of $500,000. That's just pure malpractice." and "Defendants were not knowledgeable regarding the lack of caps on policy limits on first party benefits associated with injuries from a motor vehicle accident, or merely intentionally deceived the clients to accomplish a settlement and a fee." Plaintiffs fail to address the Fieger defendants' claim that the settlement was recommended based on the insurance company's threat to file suit and rescind the policy due to allegations of fraud. Additionally, although plaintiffs argue that summary disposition was premature, they do nothing to indicate how additional discovery could have assisted their case.

Finally, regarding plaintiffs' claim that the trial court erred by refusing to substitute the special fiduciary as the plaintiff prior to entering summary disposition in defendants' favor, we decline to consider the issue as insufficiently briefed. See *Yee*, 251 Mich App at 406.

In conclusion, Judge Kumar did not err in dismissing Samir's and his estate's claims against the Linden and Fieger defendants in both the first and third malpractice actions because there was no attorney-client relationship at the time of the alleged malpractice and neither Samir nor his estate was the real party in interest. As to Sundus's claims against the Fieger defendants in the third action, Judge Kumar did not err in concluding that Sundus failed to state a claim for legal malpractice against the Fieger defendants as the allegations in her complaint were

conclusory and did not satisfy her obligation of demonstrating that the alleged instances of negligence were the proximate cause of her injuries.

## V. JUDGE KUMAR'S FINDING REGARDING THE STATUTE OF LIMITATIONS

In Docket Nos. 338074 and 338075, plaintiffs argue that Judge Kumar erred in concluding that the statute of limitations had expired as to the Linden defendants.

As it relates to the Linden defendants, plaintiffs' brief focuses entirely on Judge Kumar's finding that plaintiffs' claim was barred by the two-year limitations period. Plaintiffs barely acknowledge that the primary reason Judge Kumar dismissed their claims against the Linden defendants in the third suit was because of the second lawsuit between the same parties and raising the same allegations.

> This Court finds that the Plaintiffs in the Third Malpractice Action are substantially the same as the Plaintiffs in the Second Malpractice Action, and they have alleged an identical claim of legal malpractice against the Linden Defendants in both actions. Plaintiffs appealed the Court's final order in the Second Malpractice Action and, therefore, Plaintiffs' allegations and request for relief against the Linden Defendants must be addressed by the Court of Appeals in that pending appeal and not by this Court in a subsequent suit. Thus, summary disposition under MCR 2.116(C)(6) is proper, and Plaintiffs' claims against the Linden Defendants in the Third Malpractice Action are dismissed.

Only later did Judge Kumar provide an alternative basis for granting summary disposition based on the statute of limitations. Judge Kumar explained:

> *Even if Sundus Warda's claims against the Linden Defendants in the Third Malpractice Action were not barred by MCR 2.116(C)(6),* they would be barred by MCR 2.116(C)(7) because she filed her complaint after expiration of the applicable statute of limitations. Sundus Warda retained the Linden Defendants to represent her as conservator of Samir Warda's Estate in the probate proceedings. The Linden Defendants served Sundus Warda in a professional capacity until she terminated the professional relationship in a letter dated September 3, 2014. Thus, Sundus Warda had until September 3, 2016 to file a complaint for legal malpractice against the Linden Defendants. Sundus Warda filed her complaint in the Third Malpractice Action on December 28, 2016, after expiration of the statute of limitations.

> Plaintiffs allege that the statute of limitations was tolled because Samir Warda was insane at the time of injury under MCL 600.5851 and because of various procedural matters in the probate proceedings. However, at the time of the alleged malpractice, the Linden Defendants had an attorney-client relationship with Sundus Warda, and not Samir Warda or his estate. There are no allegations that Sundus Warda was ever insane or otherwise mentally incompetent and, therefore, the statute of Limitations for her legal malpractice claim was never tolled. Thus, Sundus Warda's claims against the Linden Defendants in the Third

-14-

Malpractice Action are barred by the statute of limitations and dismissed. [Emphasis added.]

"A legal malpractice claim must be brought within two years of the date the claim accrues, or within six months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later." *Kloian*, 272 Mich App at 237. MCL 600.5838(1) provides:

> [A] claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

A lawyer discontinues servicing a client when he is relieved of the obligation by the client or the court, or when he completes a specific legal service he was retained to perform. *Balcom v Zambon*, 254 Mich App 470, 484; 658 NW2d 156 (2002).

Plaintiffs claim that the statute of limitations was tolled under MCL 600.5851(1), which provides, in relevant part:

> if the person first entitled to make an entry or bring an action under this act is under 18 years of age or insane at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run.

However, as previously discussed and in keeping with *Maki*, the Linden defendants only had a legal relationship with Sundus. Because she was the one with the right to bring the action and never claimed that she lacked mental capacity to bring the claim, the statute of limitations did not toll. The "disability, the infancy or insanity must exist at the time the claim accrues." MCL 600.5851(3). The claim accrued on September 3, 2014 when Sundus fired the Linden defendants and expired two years later on September 3, 2016.

Affirmed. Having fully prevailed on appeal, taxable costs are awarded to all appellees under MCR 7.219.

/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Kirsten Frank Kelly

-15-