*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF BIMLA NAYYAR, by RAKESH
NAYYAR, Personal Representative,

Plaintiff-Appellee,

v

OAKWOOD HEALTHCARE, INC., doing
business as OAKWOOD HOSPITAL &
MEDICAL CENTER,

Defendant-Appellant.

UNPUBLISHED
May 14, 2020

No. 343676
Wayne Circuit Court
LC No. 13-009819-NH

Before: METER, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

The decedent in this case, Bimla Nayya, suffered unnecessary brain surgery and died weeks later. Defendant hospital admitted breaching the standard of care, but following various procedural and substantive turns in the lawsuit below, a prior panel of this Court ordered the trial court to enter judgment in favor of defendant. Plaintiff sought review of this order with our Supreme Court, but that Court declined leave and the matter was remanded to the trial court to enter judgment in defendant's favor. On remand, the trial court granted judgment in defendant's favor, but then immediately granted plaintiff relief from that judgment under MCR 2.612(C). Defendant now appeals.

After reviewing the record and applicable case law, it is evident that the trial court exceeded its limited authority on remand when it granted relief to plaintiff. Moreover, under the law-of-the-case doctrine, this panel is likewise bound by the prior panel's order and cannot provide independent relief to plaintiff. Accordingly, we affirm in part and reverse in part and remand for proceedings consistent with this opinion.

## I. BACKGROUND

This dispute has an extensive, protracted history. Given the issues raised in the current appeal, a detailed review of this history is appropriate.

*Unnecessary Surgery and Subsequent Death of Bimla Nayyar.* In 2011, Bimla Nayyar was an 81-year old wife and mother. During the latter part of the year, Bimla had been in a rehabilitation clinic related to some health issues. Bimla had a dislocated jaw, and in January 2012, she was transferred for treatment to the facility operated by defendant Oakwood Healthcare, Inc., d/b/a Oakwood Hospital & Medical Center. Tragically, someone at Oakwood Hospital mislabeled Bimla's radiology scan and, as a result, she underwent an unnecessary craniotomy, i.e., brain surgery, on January 9, 2012. After weeks of medical complications and immense suffering, Bimla passed away on March 11, 2012.

*Initial Lawsuit Dismissed With Prejudice.* After Bimla's death, her estate, represented by her son Rakesh Nayyar, sued Oakwood Hospital and several individuals. To avoid confusion, the initial lawsuit filed in Wayne County Circuit Court (Docket No. 12-013694-NO) will be referred to as the "first lawsuit," and the estate will be referred to as "plaintiff" throughout this opinion.

In the first lawsuit, plaintiff alleged counts of ordinary negligence and vicarious liability against Oakwood Hospital and a count of battery against Samer Elfallal, D.O., and Tejpaul Pannu, M.D., for performing an unnecessary craniotomy on Bimla. The defendants moved for summary disposition, and the trial court granted the motion. Counsel for the defendants drafted the proposed order, and the draft order made clear that dismissal of the ordinary-negligence claim would be "with prejudice." Plaintiff's counsel asked that language be added to make clear that plaintiff could refile a similar complaint for medical malpractice, and the defendants' counsel agreed. The resulting language, stipulated as to form by plaintiff's counsel and signed by the trial court, stated in relevant part:

> IT IS HEREBY ORDERED that Defendants' Motion for Summary Disposition is GRANTED, that Plaintiff's claims of ordinary negligence contained in Count I and battery contained in Count III are dismissed with prejudice, and that the above cause is hereby dismissed in its entirety for the reasons stated on the record.

> IT IS FURTHER ORDERED that entry of this order shall not preclude Plaintiff from bringing a medical malpractice claim. [Order entered Feb. 19, 2013, Docket No. 12-013694-NO.]

Relevant to this appeal, the following are matters evident from the record in the first lawsuit: (1) the trial court dismissed plaintiff's ordinary-negligence claim with prejudice; (2) plaintiff's counsel negotiated the right to refile a lawsuit for medical malpractice; and (3) the trial court expressly preserved in its order plaintiff's right to refile a lawsuit claiming medical malpractice. Plaintiff did not move for reconsideration or appeal the dismissal order.

*Second (Current) Lawsuit.* On July 26, 2013, plaintiff refiled its complaint in Wayne County Circuit Court (Docket No. 13-009819-NH), this time naming only Oakwood Hospital as defendant. This is the lawsuit to which the current appeal relates.

In this second (current) lawsuit, plaintiff alleged the same essential facts as in the first one, and plaintiff set forth one count of "negligence" against the hospital. The allegations in the complaint make clear that the negligence claim is one for medical malpractice. For example, plaintiff alleged that Bimla "received the care and treatment constituting the malpractice" of defendant and that defendant owed Bimla "a duty to maintain the standard of care and treatment of its peers within the professional community of hospital administrations across the country." Plaintiff also attached two affidavits of merit in support of the complaint pursuant to MCL 600.2912d.

*Discovery and Pretrial-Motion Practice.* Discovery and pretrial-motion practice ensued in this case for several years. Throughout this period, plaintiff consistently referred to the action as a "medical malpractice matter" or words to that effect. See, e.g., Plaintiff's Response to Defendant's Motion for Second Adjournment of Scheduling Order Dates (filed on April 7, 2014); Plaintiff's Brief in Support of Response in Opposition to Defendant's Motion in Limine to Partially Preclude Plaintiff's Expert Dr. Lander's Testimony (filed on April 15, 2015).

As part of discovery, plaintiff served requests to admit on defendant, and, in response, defendant admitted the following: ". . . Defendant admits that Defendant and/or Defendant's agents owed a duty to Bimla Nayyar to refrain from placing Bimla Nayyar's name on a radiology slide that belonged to another patient, and that Defendant and/or its agents failed to fulfill this duty. Defendant further admits that Bimla Nayyar underwent an unnecessary craniotomy on January 9, 2012, as a result of this failure." Defendant's Answer to Plaintiff's Request to Admit at pp 1-2 (dated July 25, 2014). Subsequently, defendant consistently acknowledged that it had breached the appropriate standard of care and that the only two elements at issue for trial were causation and damages. See, e.g., Defendant's Motion in Limine (filed on April 10, 2015).

Although the parties had repeatedly characterized plaintiff's claim as one for medical malpractice, as the trial date grew near, the record shows that plaintiff began to resurrect the ordinary-negligence claim dismissed in the first lawsuit. To illustrate, a couple of weeks prior to trial, defendant moved to preclude plaintiff from asserting any new claim not included in the complaint in this case. In response, plaintiff characterized this case as a "medical malpractice action," denied that the "claims of malpractice have not been pled with reasonable definiteness and certainty," and expressly denied that plaintiff had any intention "to assert any 'new theories' not already pled in [its] complaint." Plaintiff's Response in Opposition to Defendant's Motion in Limine to Preclude Plaintiff from Making Any New Claims at Trial Not Pled in the Complaint at pp 1, 3-4 (filed on April 15, 2015).

But then, just a few days before trial, the record shows a material shift in plaintiff's approach to this case. On April 20, 2015, the trial court held a hearing on various pretrial motions in limine. During the hearing, plaintiff's counsel asserted, "Operating on the wrong patient is not medical malpractice. Never has been. Never will be." Hr at p 17. Then on April 24, 2015, the parties submitted a proposed joint pretrial order. In the proposed order and consistent with the

argument made during the prior motion hearing, plaintiff identified the issues of law that it believed were pertinent to the trial, and it included in this list whether "any cap on damages [applied] in this case (to be decided after trial)." Medical-malpractice claims are subject to certain statutory caps on damages, while ordinary-negligence claims are not. See MCL 600.1483. The trial court entered the order with this language on April 27, 2015.

*Jury Trial and Various Trial Motions*. On the same day that the trial court entered the final pretrial order, the jury trial commenced. Prior to jury selection, the trial court and counsel for the parties handled various preliminary matters. It was during this colloquy that plaintiff's counsel exclaimed on the record, "This isn't a malpractice claim. No." Tr I at p 27. Plaintiff's counsel argued that it was only after the close of proofs that the trial court should make a determination whether this was a medical-malpractice claim or an ordinary-negligence claim. *Id.* at p 28.

Defendant's counsel immediately asked for clarification, "Am I understanding [plaintiff's counsel] to say this is not a malpractice case, but an ordinary negligence case?" Plaintiff's counsel responded, "And I will make that -- that's not only correct, but it's going to -- and I'm going to ask the Court to so find at the conclusion of this case because that's what the statute says." *Id.* at p 32. Because the ordinary-negligence claim had already been dismissed "with prejudice" in the first lawsuit, defendant's counsel moved immediately to dismiss the current lawsuit based on plaintiff's counsel's statement that he intended to go forward on an ordinary-negligence claim. *Id.* at pp 32-33, 40, 47. The trial court denied the motion and, after reading defendant's earlier admission, it explained, ". . . the Court finds that the basis for the admission of liability was the *professional negligence* which was set forth therein; however, there still has to be a supporting evidence for the proximate cause. So we will litigate the issues of proximate cause." *Id.* at p 50 (emphasis added).

A jury was then selected and instructed. The trial court described plaintiff's claim as one "involving wrongful death, medical malpractice" and characterized plaintiff's burden as one involving "professional negligence or malpractice" of the defendant. *Id.* at pp 130-132. Consistent with defendant's earlier admissions, the trial court instructed the jury that "the issues of negligence have been admitted." *Id.* at p 133. This effectively removed any question as to the appropriate standard of care or breach, and the jury was instructed solely with respect to causation and damages (as well as other standard instructions).

The question of ordinary negligence versus medical malpractice continued to play out over the next several days of trial. Plaintiff's counsel submitted a memorandum to the trial court arguing that this case involved ordinary negligence. According to plaintiff's counsel, "No court could ever hold that operating on the wrong patient raises questions involving medical judgment." Memorandum to Court Regarding Application of Non-Economic Damages Cap After Jury Verdict Only at p 3 (filed on April 27, 2015). Consistent with this memorandum, plaintiff's counsel subsequently filed a motion with both the trial court in the current lawsuit and the trial court in the first lawsuit to, in the words of plaintiff's counsel, "correct the obvious clerical error in the order which indicated that there was a dismissal with merits, on the merits of this case which cannot be under the law." Tr IV at p 246. Plaintiff's counsel further characterized the dismissal of the ordinary-negligence claim with prejudice in the first lawsuit as a "trick" played by defendant's counsel. Tr V at p 4. In response, defendant's counsel pointed out that (1) plaintiff's counsel did

not appeal the earlier dismissal, (2) plaintiff's counsel had been involved in negotiating the wording of the proposed order of dismissal, and (3) defendant's counsel would have made different strategic choices in the current lawsuit had this been an ordinary-negligence case from the outset. Tr V at pp 15, 28.

On the fifth day of trial, the trial court in this lawsuit granted plaintiff's motion to correct, holding that the trial court in the first lawsuit must have made an error. The trial court held that the prior dismissal order had to be corrected so that the dismissal of the ordinary-negligence claim would be without prejudice. Tr V at pp 30-31. The trial court entered an order to this effect. Yet, the very next day, the same trial court vacated its order and directed plaintiff to file the motion with the trial court in the first lawsuit. In vacating its order, the trial court also ordered "sua sponte that Plaintiff's complaint is amended to include a claim of ordinary negligence." Order entered May 5, 2015, Docket No. 13-009819-NH. (For its part, the trial court in the first lawsuit subsequently denied plaintiff's motion, holding, "There has been no showing of any clerical error or mistake." Order entered May 7, 2015, Docket No. 12-013694-NO. Plaintiff's attempts to appeal this decision were unsuccessful.)

The legal wrangling over whether plaintiff had a viable ordinary-negligence claim played out primarily outside the presence of the jury. In line with the trial court's instructions at the outset of the trial, the testimony presented to the jury focused on causation and damages. Plaintiff's counsel elicited testimony that, prior to the unnecessary brain surgery, Bimla had been in relatively good health for a person of her age and medical history, while defendant's counsel elicited testimony to the contrary. There was testimony describing Bimla's complications and suffering after the surgery, omissions or misleading statements in the subsequent medical history that arguably exacerbated her complications and suffering, and her family members' pain and loss over the passing of the family matriarch. This testimony had no particular bearing on whether defendant breached a specific standard of care with respect to its treatment of Bimla.

With that said, plaintiff's counsel did elicit testimony at trial on the standard of care and breach. A review of the record confirms that this testimony was not voluminous, but it was pointed. On multiple occasions, plaintiff's counsel asked, and a medical witness answered, a variant of the following: "Q. You don't have to be a doctor to know you can't operate on the wrong patient to do brain surgery . . . do you? . . . A. I don't think you need to be a doctor to understand that you should not do brain surgery on a -- patient. I agree with you." Tr III at p 85; see also Tr IV at pp 59-60, 184-185; Tr V at pp 56, 84. Defendant's counsel objected to this line of questioning, arguing that the testimony raised issues involving the proper standard of care and breach, but the trial court overruled the objection without explanation. Tr III at pp 84-86; see also Tr IV at pp 59, 118, 185; Tr V at pp 56, 84; Tr VI at pp 12.

In fact, the reason for this testimony was made clear by plaintiff's counsel, when he argued to the trial court that this testimony confirmed that this was an ordinary-negligence case, not a medical-malpractice one: "The defendant claims that they engaged the trickery, and they got Judge Oxholm [the trial judge in the first lawsuit] to dismiss the negligence case with prejudice and so the plaintiff can never, you can never make a determination. [Defendant's counsel is] going to make this argument that this case is not [sic] a medical malpractice case even though it's obviously not, even though every witness on the stand has testified this is what that's that you don't need to

be a doctor to figure out that you don't operate on the wrong patient." Tr V at p 9. As noted, plaintiff's counsel asked a variant of this question multiple times, and each time the jury heard the testimony in answer.

After the close of proofs on the sixth day of trial, the trial court instructed the jury on the elements of causation and damages, but not the standard of care or breach. The jury found in favor of plaintiff and awarded $300,000 in economic damages and $19.7 million in noneconomic damages. The trial court entered judgment in plaintiff's favor for the full, uncapped amount of the award. Consistent with the position at trial, plaintiff maintained throughout the post-trial proceedings before the trial court that this was an ordinary-negligence case. The trial court agreed, as it declined to apply the statutory caps on damages for medical-malpractice awards.

Defendant subsequently moved for a new trial and for judgment notwithstanding the verdict (JNOV). With respect to the JNOV motion, defendant argued that plaintiff admitted during the trial that this was not a medical-malpractice case but, rather, an ordinary-negligence case. But, as defendant pointed out, plaintiff's ordinary-negligence claim had been dismissed with prejudice, the dismissal had not been appealed, and the first trial court had held that there was no clerical error or mistake with respect to the dismissal. Because plaintiff did not appear to have a viable claim remaining—no medical-malpractice claim (abandoned) and no ordinary-negligence claim (dismissed on merits)—defendant sought a JNOV. Plaintiff responded in relevant part, "Based on the evidence adduced at trial, it became blatantly clear that Plaintiff's claims against Defendant sounded in ordinary negligence, and not medical malpractice (the hospital operated on the wrong patient), and on May 5, 2015, this court entered an order allowing Plaintiff to pursue an 'ordinary negligence' claim pursuant to MCR 2.118(C)." Plaintiff's Response in Opposition to Defendant's Motion for Judgment Notwithstanding the Verdict at p 5.

The trial court denied the motion for JNOV, explaining from the bench, "At this juncture, the Court sees no reason to undo the jury's verdict. That has been submitted, and the Court will continue to let the jury's verdict stand." Hr at p 13. It entered an order to this effect on August 18, 2015, and the trial court likewise denied the motion for a new trial in an order entered on August 20, 2015.

*Defendant's First Appeal.* On September 4, 2015, defendant filed an appeal as of right with this Court. Relevant to the current appeal, defendant also moved the prior panel for peremptory reversal, the thrust of which was that because the trial court in the first lawsuit had dismissed the ordinary-negligence claim on the merits, and plaintiff had tried this action as an ordinary-negligence case, his ordinary-negligence claim was barred as a matter of law, and defendant ought to have been granted JNOV. Defendant argued that plaintiff was precluded by the collateral-attack doctrine, as well as by collateral estoppel and res judicata, from securing a judgment that thwarted the trial court's order of dismissal in the first lawsuit.

In response to defendant's motion and consistent with the proceedings below, plaintiff argued that this was an ordinary-negligence case rather than a medical-malpractice case. According to plaintiff, "It is true that the Estate is committed to the position that plaintiff's claim is one for ordinary negligence." Plaintiff-Appellee's Response in Opposition to Defendant-Appellant's Motion for Peremptory Reversal at p iii. Plaintiff further asserted, "Plaintiff was

allowed to re-file and litigate his negligence claim, and the proofs adduced throughout litigation established that the claim sounded in ordinary negligence, not medical malpractice." Plaintiff-Appellee's Brief in Support of His Response in Opposition to Defendant-Appellant's Motion for Peremptory Reversal at p v.

The Court granted defendant's motion for peremptory reversal. The order reversed the trial court's order denying defendant's motion for JNOV, vacated the trial court's judgment in favor of plaintiff, and remanded with instructions for the trial court to enter an order granting defendant's motion for JNOV. Specifically, this Court's order provided:

> The Court orders that the motion for peremptory reversal pursuant to MCR 7.211(C)(4) is GRANTED. As we previously held in *Estate of Nayyar v Oakwood Healthcare, Inc*, unpublished order of the Court of Appeals, entered June 4, 2015 (Docket No. 327506), the Wayne Circuit Court's May 5, 2015 order amending the complaint to include a claim of ordinary negligence constituted an impermissible collateral attack on the February 19, 2013 order entered in WCCC No. 12-013694-NO. *People v Howard*, 212 Mich App 366, 369; 538 NW2d 44 (1995) ("a collateral attack occurs whenever a challenge is made to a judgment in any manner other than through a direct appeal."). The latter order granted defendant's motion for summary disposition, dismissed plaintiff's ordinary negligence claim with prejudice, and expressly resolved the last pending claim in the matter. Plaintiff did not appeal. The February 19, 2013 order therefore constituted a final ruling on the merits and is immune from collateral attack. *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006) ("a decision is final when all appeals have been exhausted or when the time available for an appeal has passed"); *Kosch v Kosch*, 233 Mich App 346, 353; 592 NW2d 434 (1999) ("Defendant's failure to file an appeal from the original judgment . . . pursuant to MCR 7.205(A) or (F), precludes a collateral attack on the merits of that decision."). Further, because the same parties fully litigated the viability of ordinary negligence in a prior proceeding and the result of that proceeding would have bound either party, collateral estoppel precludes plaintiff from asserting ordinary negligence now. *Detroit v Qualls*, 434 Mich 340, 357; 454 NW2d 374 (1990) (a ruling on summary disposition resolves a matter on the merits for purposes of collateral estoppel); see also *Monat v State Farm Ins Co*, 469 Mich 679, 691; 677 NW2d 843 (2004). Indeed, under the February 19, 2013 order, only the alternate theory of medical malpractice remained available to plaintiff against this defendant. See *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411, 420-422; 684 NW2d 864 (2004) (explaining that although arising out of a single occurrence, medical malpractice and ordinary negligence present alternate theories of liability). Accordingly, where plaintiff unequivocally proceeded in this action under an ordinary negligence theory and the jury awarded damages under that theory, defendant was entitled to judgment notwithstanding the verdict (JNOV).
>
> The Wayne Circuit Court's August 18, 2015 order denying defendant's motion for JNOV is REVERSED, the June 8, 2015 Judgment is VACATED and the cause is remanded for entry of an order granting defendant's motion for JNOV.

[*Nayyar v Oakwood Healthcare Inc*, unpublished order of the Court of Appeals, entered July 15, 2016 (Docket No. 329135).]

The Court subsequently denied plaintiff's motion for reconsideration, and our Supreme Court denied plaintiff's application for leave as well as a subsequent motion for reconsideration. *Nayyar v Oakwood Healthcare, Inc*, 500 Mich 1032; 897 NW2d 183 (2017), recon den 501 Mich 972 (2018).

*Remand to the Trial Court.* On remand to the trial court, plaintiff moved the trial court to enter the JNOV as directed by this Court, but then immediately grant relief from that JNOV under MCR 2.612(C)(1)(a), (c) and (f). Plaintiff argued that this Court's order of peremptory reversal was grounded in "a complete falsity and mistake of fact as to how this case was tried, a mistake fostered by Defendant Oakwood."

Defendant filed a response, informing the trial court that it could not "overrule the Court of Appeals," and that it must act consistently with this Court's order. Defendant also argued that the trial court was bound by the law-of-the-case doctrine. For its part, defendant moved the trial court to vacate its earlier judgment, vacate its order denying JNOV, and enter JNOV in defendant's favor consistent with this Court's order.

The trial court held a hearing on both motions. At the conclusion of the hearing, the trial court observed that that the jury trial did not decide issues of negligence, only causation and damages. The trial court gave voice to its concern that the prior panel of this Court had operated under a mistaken understanding of the facts when it ordered peremptory reversal, as well as the trial court's belief that there might have been misrepresentations of the record to this Court. In its written order, the trial court stated that it was granting relief from judgment under MCR 2.612(C)(1)(a), (c) and (f):

(C) Grounds for Relief From Judgment.

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

(a) *Mistake, inadvertence, surprise, or excusable neglect.*

(b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).

(c) *Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.*

(d) The judgment is void.

-8-

(e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application.

(f) *Any other reason justifying relief from the operation of the judgment.* [MCR 2.612 (emphasis added).]

*Second (Current) Appeal.* This Court subsequently granted defendant's emergency application for leave to appeal "limited to the issues raised in the application and supporting brief." *Nayyar v Oakwood Healthcare, Inc*, unpublished order of the Court of Appeals, entered June 21, 2018 (Docket No. 343676).

## II. ANALYSIS

### A. TRIAL COURT ACTED OUTSIDE ITS AUTHORITY ON REMAND

The core issue on appeal is the scope of the trial court's authority to set aside the order of JNOV that an earlier panel of this Court directed the trial court to enter. Whether the trial court followed this Court's directive on remand is a legal question that we review de novo. *Lenawee Co v Wagley*, 301 Mich App 134, 149; 836 NW2d 193 (2013). Similarly, we review de novo whether the law-of-the-case doctrine applies. *Augustine v Allstate Ins Co*, 292 Mich App 408, 424; 807 NW2d 77 (2011). "Interpreting the meaning of a court order involves questions of law that are reviewed de novo." *Id.* at 423. "Where the trial court misapprehends the law to be applied, an abuse of discretion occurs." *Bynum v ESAB Group, Inc,* 467 Mich 280, 283; 651 NW2d 383 (2002).

A trial court's scope of authority on remand is well-settled in this state. In general, a trial court can "take such action as law and justice may require so long as it is not inconsistent with the judgment of the appellate court." *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 703; 854 NW2d 509 (2014) (cleaned up). If, on the one hand, the remand order lacks instructions, then the trial court "has the same power as if it made the ruling itself." *Id.* (cleaned up). If, on the other hand, the remand order provides instructions, then the trial court is bound by those instructions. As this Court has put it, "It is the duty of the lower court or tribunal, on remand, *to comply strictly* with the mandate of the appellate court." *Id.* (emphasis added, cleaned up). Our Supreme Court summed up a trial court's authority this way: "The power of the lower court on remand is to take such action as law and justice may require so long as it is not inconsistent with the judgment of the appellate court." *Sokel v Nickoli*, 356 Mich 460, 464; 97 NW2d 1 (1959).

The law-of-the-case doctrine is likewise well-settled in this state. As a general matter, "an appellate court's determination of an issue in a case binds lower tribunals on remand and the appellate court in subsequent appeals." *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000); see also *CAF Investment Co v Saginaw Twp*, 410 Mich 428, 454; 302 NW2d 164 (1981). The doctrine will apply only "to questions actually decided in the prior decision and to those necessary to the court's prior determination." *Kalamazoo v Dep't of Corrections (After Remand)*, 229 Mich App 132, 135; 580 NW2d 475 (1998).

The law-of-the-case doctrine is similar to a court's authority on remand, but it is more expansive because it binds not only trial courts but also appellate courts in the same case. The purposes underlying the doctrine are to ensure consistency and to impede the parties' attempts to have matters already decided during the course of a lawsuit reconsidered. *Ingham Co v Mich Co Rd Comm Self-Ins Pool (On Remand)*, ___ Mich App ___, ___; ____ NW2d ___ (2019) (Docket No. 334077); slip op at 4; see also *Locricchio v Evening News Ass'n,* 438 Mich 84, 109; 476 NW2d 112 (1991) (explaining that the doctrine promotes efficiency, comity, and finality in the law).

*The Trial Court Went Beyond Its Limited Authority on Remand.* With respect to the trial court's order granting plaintiff relief from the JNOV, the trial court premised its ruling on its belief that the prior panel made a mistake in concluding that the jury trial involved a question of ordinary negligence. This ruling by the trial court and its underlying finding were outside of that court's scope of authority on remand. The prior panel made two findings that were key to its peremptory order: (1) "plaintiff unequivocally proceeded in this action under an ordinary negligence theory"; and (2) "the jury awarded damages under that theory." Regardless of whether the trial court believed that the prior panel made a mistake with either finding, as a lower court in our hierarchical judicial system, the trial court did not have the authority to, in effect, overrule a higher court. Decades, if not centuries, of case law counsel against this. Furthermore, the prior panel's order gave clear, specific instructions for the trial court to follow on remand, and the trial court did not have the authority to take action inconsistent with those instructions, which the trial court did by granting relief that subverted the prior panel's instructed relief. See *Bennett v Bennett*, 197 Mich App 497, 501-502; 496 NW2d 353 (1992) ("Where a litigant believes that this Court erred, the appropriate remedy is to seek either rehearing in this Court or leave to appeal to the Supreme Court, not to return to the trial court and argue that the Court of Appeals decision was erroneous and, therefore, should not be followed.").

Nor can a trial court use MCR 2.612 as a means for expanding its limited authority on remand, especially when the law-of-the-case doctrine squarely applies. This Court had occasion to review a similar circumstance in *Sumner v General Motors Corp (On Remand)*, 245 Mich App 653; 633 NW2d 1 (2001). In that case, the trial court ordered relief on remand under MCR 2.612(C)(1)(e), which allows for relief from judgment under circumstances in which "[t]he judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application." This Court reversed, explaining that a trial court's authority to grant relief from judgment is "limited to granting relief from *its own* judgment; it cannot grant relief from a judgment of this Court." *Id.* at 666.

In the present case, the trial court's decision to grant relief from judgment under MCR 2.612(C)(1) amounted to an abuse of discretion because in granting the relief, the trial court took action that was inconsistent with and undermined this Court's order instructing the trial court to enter judgment in defendant's favor. The law in Michigan is clear that on remand the trial court's authority is limited, and it must act in conformance with this Court's instructions. *Glenn*, 305 Mich App at 703; see also *Augustine*, 292 Mich App at 425 ("The trial court is bound to strictly comply with the law of the case, as established by this Court, according to its true intent and meaning." (Cleaned up)). The court rule gives a trial court authority to correct its own mistake; it does not give that court authority to correct the perceived mistake of an appellate court.

If a trial court on remand firmly believes that a mistake has been made by an appellate court, it is not without recourse. A trial court can, for instance, issue a written opinion as part of its order or judgment, expressing its doubts or concerns about an earlier ruling by an appellate court. It can explain, with quotations and citations to the record, why it believes an earlier ruling by an appellate court was in error. If a party has committed fraud on the court during the prior proceeding, then the trial court can explain how this fraud was committed and why it undermines justice in this case. This type of written opinion—following the appellate court's instructions but explaining its misgivings in doing so—could be strong ammunition for a party to have in hand for another appeal, even if it falls short of a judgment in that party's favor.

As explained, the trial court erred on remand by exercising authority it did not have. Neither constitutional provision, statute, precedent, nor court rule permitted the trial court to set aside the relief ordered by a prior panel of this Court. In doing so, the trial court abused its discretion.

## B. THIS PANEL IS BOUND BY LAW OF THE CASE

And yet, regardless of whether the trial court abused its discretion, the case now sits squarely before this Court on appeal. Plaintiff argues that we are not bound to follow the prior panel's order because, as plaintiff argued before the trial court, that order violated due process. Moreover, plaintiff maintains that the order was premised on mistakes that, if left uncorrected, would preserve an unjust result. Accordingly, we turn to consider the scope of our authority on remand with respect to the prior panel's order.

Courts of this state have often characterized the law-of-the-case doctrine as a discretionary rule, rather than a strict limitation on an appellate court's authority. See, e.g., *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 128; 737 NW2d 782 (2007). With that said, direction provided by our Supreme Court as to the nature of this "discretion" has been, at times, confusing. For example, in *Johnson v White*, 430 Mich 47, 52; 420 NW2d 87 (1988), our Supreme Court held that this Court had exceeded its "jurisdiction on remand" by reaching an issue previously decided by a panel in the first appeal. The reasons for the law-of-the-case doctrine, according to the Supreme Court, are "the need for finality of judgment and *the want of jurisdiction* in an appellate court to modify its own judgments except on a rehearing." *Id.* at 53 (emphasis added). The "want of jurisdiction" on remand as described in *Johnson* is difficult to square with the descriptions of discretion that an appellate court is said to retain under the doctrine. Other decisions of our Supreme Court and this Court have characterized the discretion to be narrowly circumscribed. See, e.g., *CAF*, 410 Mich at 454-455; *Duncan v Michigan*, 300 Mich App 176, 188-189; 832 NW2d 761 (2013).

Therefore, as we read our state's case law, we have a "mandatory obligation" to adhere to the law-of-the-case doctrine except in several well-defined, limited circumstances. *Duncan*, 300 Mich App at 189. The doctrine is not binding, for instance, when there has been a material change in the facts on remand or an intervening change in the law. *Id.* Similarly, if there is a significant competing interest at stake, such as a constitutional right, then the doctrine is not mandatory. See, e.g., *Locricchio*, 438 Mich at 109-110 (stating that in a libel case in which "constitutionally protected public discourse" was at issue, a second review by a subsequent panel should not have

been precluded by the law-of-the-case doctrine); see also *In re Forfeiture of $19,250*, 209 Mich App 20, 30; 530 NW2d 759 (1995) (explaining that the doctrine does not apply to a decision obtained by fraud).

None of these exceptions apply here. Plaintiff does not argue that there has been a material change in the facts or an intervening change in the law, and review of the record confirms that defendant did not commit fraud in the first appeal. Plaintiff does argue that there was a due-process violation with respect to the prior appeal, but the argument lacks merit. Broadly speaking, due process requires notice and a meaningful opportunity to be heard. See *Bonner v Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014). Plaintiff asserts that the prior panel's peremptory-reversal order was based on false representations about the record. But, plaintiff had sufficient notice of the representations and several opportunities to be heard on them (e.g., response to motion for peremptory reversal; motion for reconsideration; application for leave to our Supreme Court). Similarly, plaintiff has not provided any authority indicating that our court rules with respect to motions or applications for leave violate due process, and our research did not reveal such authority. As for substantive due process, plaintiff has failed to show how an appellate court's reversal of a trial court's judgment somehow violates due process—plaintiff's position would effectively undo any appellate review of any judgment. Accordingly, there is no indication that plaintiff was deprived of due process in the prior appeal.

## C. NO EXCEPTION FOR MISTAKE BY PRIOR PANEL

Apart from its due-process arguments, plaintiff also argues that the prior panel's decision was mistaken and letting the decision stand would be unjust. Some jurisdictions do recognize a clear mistake resulting in manifest injustice as an exception to the doctrine. See generally 13B Wright, Miller, & Cooper, *Federal Practice & Procedure* § 4478, pp 670-691 (collecting cases). In those jurisdictions that recognize this exception, there appears to be quite a high bar for relief. As the Fifth Circuit described the matter, "Only in extraordinary circumstances may this court sustain a departure from the law of the case doctrine on the ground that a prior decision was clearly erroneous. Mere doubts or disagreement about the wisdom of a prior decision will not suffice. To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must be dead wrong." *City Pub Serv Bd v General Elec Co*, 935 F2d 78, 82-83 (CA 5, 1991) (cleaned up). Moreover, even if a prior decision was "dead wrong," these jurisdictions also recognize that more than mere error is required for relief—the failure to correct the mistaken decision must lead to "manifest injustice." See *FPP* § 4478, at p 686.

On the one hand, a case can be made that the prior panel erred. As noted earlier, there were two findings that grounded the prior panel's decision: (1) "plaintiff unequivocally proceeded in this action under an ordinary negligence theory"; and (2) "the jury awarded damages under that theory." On the first ground, after the original ordinary-negligence case was dismissed on the merits in the first lawsuit, plaintiff filed the current (second) lawsuit. From its inception until a few days before trial, the current (second) lawsuit was unequivocally litigated under a medical-malpractice theory, both by plaintiff and defendant. This is evidenced throughout many of the pretrial briefs and notices filed by the parties. On the second ground, plaintiff correctly points out that the legal wrangling about ordinary negligence versus medical malpractice occurred outside of the jury's presence. Defendant had admitted a breach of the standard of care prior to trial, so trial

testimony focused on causation and damages, neither of which depended to any material extent on whether this was a medical-malpractice or ordinary-negligence case.  See *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 496-497; 791 NW2d 853 (2010).  The jury was instructed on causation and damages, and it was not instructed on the standard of care, breach, or caps on damages.  As countless decisions of this Court and our Supreme Court recognize, a jury is presumed to follow its instructions.  See, e.g., *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

On the other hand, a case can be made that the prior panel did not err.  Although the case started out as a medical-malpractice action, beginning a few days before trial and lasting through post-trial motions before the trial court and this Court, plaintiff pivoted and unequivocally proceeded to litigate this case under an ordinary-negligence theory.  Once it made this decisive pivot, plaintiff consistently maintained that this was not a medical-malpractice case, but rather one sounding in ordinary negligence.

Moreover, while the focus of the trial was on causation and damages, the trial court did permit plaintiff's counsel repeatedly to ask various medical witnesses a variation of the question, "You don't need to be a doctor to know that you shouldn't perform brain surgery on the wrong patient, right?"  The answers to this question had no relevance to causation or damages.  Rather, the only relevance that the answers could have had was to the standard of care and breach.  By repeatedly asking the question and eliciting testimony in response, plaintiff's counsel interjected the ordinary-negligence theory into the jury trial.  The trial court overruled defendant's counsel's objections at trial, and by doing so, the trial court allowed this irrelevant testimony to be considered by the jury.  And, given its earlier admissions, defendant's counsel had little opportunity to rebut this irrelevant testimony with counter-proofs.  Thus, even though the jury was not instructed on the appropriate standard of care or breach, it did receive significant, irrelevant one-sided testimony on those elements.  The impact of this striking testimony alone might have been sufficient to taint the jury.

Given binding precedent, however, we need not definitively resolve whether the prior panel erred.  Case law in this jurisdiction is clear that the law-of-the-case doctrine applies regardless of the correctness of the prior determination.  Unlike several other jurisdictions, our Supreme Court has not recognized an exception to the law-of-the-case doctrine for a mistake by a prior panel, regardless of manifest injustice.  See *Johnson*, 430 Mich at 55 (declining to adopt the exception).  Indeed, it appears that our Supreme Court rejected this exception long ago:  "There are exceptions, as when a prior decision is erroneous, recognized in some of the states; but the weight of authority and of reason is in support of the rule that a prior decision is conclusive of the same question on a subsequent appeal; is the law of the case."  *Gourlay v Insurance Co of North America*, 189 Mich 384, 386; 155 NW 483 (1915); see also *Damon v De Bar*, 94 Mich 594, 595; 54 NW 300 (1893) (same).  Panels of this Court have often noted that our jurisprudence does not recognize this exception:  "Thus, a question of law decided by an appellate court will not be decided differently on remand or in a subsequent appeal in the same case.  This rule applies without regard to the correctness of the prior determination."  *Augustine*, 292 Mich App at 425 (cleaned up); see also *Grace v Grace,* 253 Mich App 357, 363; 655 NW2d 595 (2002) (same); *Sumner*, 245 Mich App at 662 (same); *Driver v Hanley (After Remand)*, 226 Mich App 558, 565; 575 NW2d 31 (1997) (same); *Reeves v Cincinnati, Inc (After Remand)*, 208 Mich App 556, 559; 528 NW2d 787 (1995) (same).  The only possible exception to this rule appears to be in the criminal context.  See *People*

*v Phillips (After Second Remand)*, 227 Mich App 28, 33-34; 575 NW2d 784 (1997); cf *People v Herrera (On Remand)*, 204 Mich App 333, 340; 514 NW2d 543 (1994) (noting that a trial court retains authority to grant a new trial in a criminal case when justice requires). As this is a civil matter, plaintiff is without recourse under our current precedent—the correctness of a prior panel's decision is not subject to review under our law-of-the-case doctrine.

Accordingly, plaintiff does not satisfy any of the exceptions from application of the law-of-the-case doctrine recognized in this jurisdiction. Applying the doctrine here, the prior panel's order is binding on us and, as a result, we cannot order relief inconsistent with that order.

With that said, we urge our Supreme Court to revisit whether, under the law-of-the-case doctrine, a panel has the authority to correct a clear error by a prior panel so as to avoid manifest injustice in a civil matter. Our case law that prohibits such correction appears at odds with other case law, here and elsewhere, that describes the doctrine as "a matter of discretion." *FPP* § 4478, at p 637; see also *Arizona v California*, 460 US 605, 618; 103 S Ct 1382; 75 L Ed 2d 318 ("Law of the case directs a court's discretion, it does not limit the tribunal's power."). Or, as Justice HOLMES once put it, the doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messenger v Anderson*, 225 US 436, 444; 32 S Ct 739; 56 L Ed 1152 (1912).

## D. JUDICIAL DISQUALIFICATION

Finally, defendant argues in its brief that the case should be assigned to a different judge on remand. Defendant did not, however, include this issue in its statement of the questions presented, and thus the matter is waived. *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019). Moreover, defendant did not move to disqualify the trial judge in accordance with MCR 2.003, and therefore defendant failed to preserve the matter. *Kloian v Schwartz*, 272 Mich App 232, 244; 725 NW2d 671 (2006). For these reasons, we decline to address defendant's request to disqualify the trial judge on the second remand.

## III. CONCLUSION

For the reasons set forth above, we affirm in part, reverse in part, and remand the matter to the trial court for further proceedings consistent with this opinion. Specifically, we affirm the trial court's grant of JNOV to defendant, and we reverse the trial court's grant of relief to plaintiff from that JNOV under MCR 2.612. The trial court is instructed to reinstate the JNOV in defendant's favor.

We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle